**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| OVIDIO A. DEANDRE,<br><br>Plaintiff,<br><br>v.<br><br>TRANS UNION LLC;<br>EQUIFAX INFO. SERVICES, LLC; and<br>KEYBANK USA;<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No: 04-534-S |

**TRANS UNION LLC'S MOTION FOR SUMMARY JUDGMENT**

Trans Union LLC ("Trans Union"), by and through its undersigned attorneys, moves this Court, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 12.1, for summary judgment. Trans Union is entitled to summary judgment as a matter of law because there is no issue of material fact. The reasons and authorities for this motion are set forth more fully in the attached Memorandum of Law in Support of Motion for Summary Judgment and exhibits thereto.

Respectfully submitted,

CONRAD M. CUTCLIFFE
KEVIN GLAVIN
CUTCLIFFE, GLAVIN & ARCHETTO
155 S. Main St., Suite 300
Providence, RI 02903-2963
(401) 454-1900; Fax: (401) 331-7001

*Of Counsel:*
Bruce S. Luckman
KOGAN, TRICHON & WERTHEIMER, P.C.
1818 Market St., 30th Floor
Philadelphia, PA 19103
(215) 575-7600; Fax: (215) 575-7688
*Counsel for Defendant, Trans Union LLC*
DATED: May 12, 2006

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| OVIDIO A. DEANDRADE,<br><br>Plaintiff,<br><br>v.<br><br>TRANS UNION LLC;<br>EQUIFAX INFO. SERVICES, LLC; and<br>KEYBANK USA;<br><br>Defendants. | C.A. No: 04-534-S |

**TRANS UNION LLC'S MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION FOR SUMMARY JUDGMENT**

Trans Union LLC ("Trans Union"), formerly known as Trans Union Corporation, by and through its undersigned attorneys, files the within Memorandum of Law in Support of its Motion for Summary Judgment:

## I. INTRODUCTION

Plaintiff's sole allegation against Trans Union is that it violated FCRA §1681i, by failing to duly reinvestigate his single attorney dispute of derogatory history of a Key Bank home improvement loan for new windows. (See Complaint, paras. 27 – 31) Plaintiff claims he was denied credit because of the reporting of the Key Bank loan account, but has not asserted that Trans Union violated FCRA §1681e(b) by furnishing an inaccurate report. (Plaintiff did make such a claim against Equifax; Equifax has settled.) Plaintiff's Pretrial Statement served pursuant to the Court's Notice, describes only the reinvestigation claim. (See p. 2) The Pretrial Statement also promised that: "Plaintiff will demonstrate via expert testimony that he suffered damages by loss of credit…" (See p. 3). No expert was ever designated despite extensions to do so.

Plaintiff purchased windows from a home improvement company called NESCOR in July 2001. Plaintiff did not have the purchase price in cash and asked NESCOR to arrange financing and signed documents to facilitate NESCOR's efforts to obtain a loan.[1] In addition, plaintiff informed NESCOR he could pay no more than $120.00 per month. NESCOR arranged a loan for him with Key Bank which included payments of $121.00 per month. (the "Key Bank Loan") Plaintiff made payments on the Key Bank Loan for over 20 months in response to two (2) invoices and then using Key Bank's coupon book. The payments were made from September 2001 to June 2003. In July 2003, the twenty-third month, plaintiff met with a lawyer and later "realized" Key Bank did not have his signature "on a paper;" plaintiff terminated the payments. Thereafter, Key Bank reported plaintiff's failure to pay on the Key Bank Loan to Trans Union which is a consumer reporting agency. Trans Union in turn included the Key Bank information in plaintiff's credit file.

Instantly, plaintiff attacks the validity of the Key Bank Loan and Trans Union's reporting of his failure to pay the Key Bank Loan. Plaintiff does not dispute he agreed to finance the purchase of the windows at the monthly payment set forth in Key Bank's coupon book and does not dispute he made payments thereon for twenty two months. He has not even complained about the windows installed in his home. In reality, plaintiff seeks to avoid his obligation to Key Bank by asserting a collateral attack on the ***reporting*** of the Key Bank Loan. However, plaintiff has adduced no evidence that Trans Union's reporting of the Key Bank Loan was inaccurate.

---

[1] NESCOR's website (http://www.888nescor1.com/finance.htm) contains the following:

> At NESCOR we pride ourselves as being a "one-stop-shopping" home remodeling company. One of the most important services that we offer is easy, no hassle, 100% financing for our customers. Because of our company and our relationship with nearly 15 different financial sources, we are often able to procure better terms than our customers are able to obtain on their own behalf.

The undisputed materials facts are as follows:[2]

1) Plaintiff purchased windows for his house from NESCOR;

2) Plaintiff asked NESCOR to arrange financing for plaintiff to purchase the windows. Plaintiff never sought financing himself because he relied upon NESCOR to obtain the financing;

3) Plaintiff signed documents in connection with the financing;

4) NESCOR advised plaintiff that NESCOR had obtained financing at the agreed monthly payment;

5) NESCOR obtained new financing for the purchase from Key Bank;

6) The monthly payment charged by Key Bank was the amount plaintiff sought and to which plaintiff agreed;

7) Plaintiff received two invoices and then a coupon book from Key Bank and duly made twenty two (22) monthly payments to Key Bank from September 2001 through June 2003; and

8) Plaintiff terminated payments to Key Bank because he did not think Key Bank had his signature on a paper.

9) Key Bank began reporting the account as delinquent after plaintiff stopped making the monthly payments.

As the foregoing makes clear, Trans Union's reporting of the Key Bank Loan was accurate. Proof of an inaccuracy is an essential element of plaintiff's FCRA claim. Absent such proof Trans Union is entitled to judgment as a matter of law. Moreover, plaintiff is not entitled to use the FCRA as a vehicle for a collateral attack against his liability to Key Bank through an FCRA dispute and lawsuit.

Finally, plaintiff has adduced utterly no evidence that Trans Union willfully violated the FCRA or actual malice, an essential element of a defamation claim allowed under FCRA §1681h(e). Plaintiff did not serve written discovery, notice any depositions or designate an

---

[2] The record sites which substantiate each fact as undisputed are set forth in detail in Trans Union's Local Rule 12.1(a)(1) Statement of Undisputed Material Facts.

expert. Accordingly, Trans Union is entitled to judgment as a matter of law on plaintiff's claims for punitive damages and defamation.

**B. Background.**

Plaintiff owns a home in Rhode Island. As more fully set forth in Trans Union's Local Rule 12.1 Statement, plaintiff and his wife decided to refurbish their home with new windows from NESCOR. A NESCOR representative visited the home and plaintiff and his wife chose windows and agreed to a monthly payment plan. Plaintiff and his wife also requested that NESCOR obtain financing for the purchase of the windows. Plaintiff relied upon NESCOR to obtain financing and therefore never looked for a lender himself. NESCOR never told plaintiff the name of the potential lender(s). The windows were installed and plaintiff was satisfied with the product and has never claimed otherwise.

After making twenty-two payments on the Key Bank Loan, plaintiff stopped making payments on the unjustified ground that he did not "sign" a "paper" with Key Bank. Thereafter, the Key Bank Loan account went delinquent and Key Bank reported the delinquency to Trans Union which appeared as adverse information in plaintiff's credit file. In July 2004, plaintiff's attorney, Christopher LeFebvre, Esquire, sent a single dispute to Trans Union respecting the Key Bank account on plaintiff's file. Pursuant to Trans Union's procedures, an investigator reviewed the materials submitted by Mr. LeFebvre and determined it could not dispose of the dispute without communicating with Key Bank. The investigator also sent Mr. Lefebvre a letter which contained the investigator's name and direct telephone extension and a unique file identification number for plaintiff. The investigator invited Mr. LeFebvre to call with any "questions or concerns" but neither plaintiff nor Mr. LeFebvre ever called Trans Union.

Trans Union conveyed plaintiff's dispute to Key Bank via the ACDV system used throughout the credit granting and reporting industry. Key Bank verified that the account was opened in plaintiff's name, with his social security number, date of birth and telephone number. Key Bank also verified that the late payment history was accurate. Trans Union then sent plaintiff an updated copy of his report on August 11, 2004 showing the verification and informing plaintiff of his FCRA rights. Plaintiff did not communicate another dispute to Trans Union until this action was filed in December 2004.

## II. ARGUMENT

### A. The Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper:

> If the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the United States Supreme Court defined the standard for summary judgment set forth in Rule 56(c):

> ...the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. 106 S. Ct. at 2552-53.

(See also, Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st. Cir. 1990))

As cogently explained in Celotex Corp., the absence of an issue of material fact can be demonstrated by an absence of evidence on such issue:

> [T]he burden on the moving party may be discharged by "showing" - that is, pointing out to the district court - that there is

> an absence of evidence to support the nonmoving party's case. 106 S. Ct. at 2554.

There are no genuine issues of material fact with respect to plaintiff's liability for the Key Bank loan and the consequent accuracy of Trans Union's reporting. Therefore, Trans Union is entitled to summary judgment.

### B. Plaintiff's Claim is An Impermissible Collateral Attack Under the Guise of an FCRA Claim

Plaintiff's unconscionable allegation that the Key Bank loan was somehow avoidable because Key Bank does not have a "signed paper" is an impermissible effort to collaterally attack that loan through an FCRA lawsuit. Dauster v. Household Credit Servs., 396 F. Supp. 2d 663, 664-666 (D. Va. 2005); See also Williams v. Colonial Bank, 826 F. Supp. 415, 417-18 (M.D. Ala. 1993) (*infra*); Wright v. TRW Credit Data, 588 F. Supp. 112, 114 (S.D. Fla. 1984).

In Wadley v. Equifax Info. Servs., LLC, 396 F. Supp. 2d 677, 679-680 (D. Va. 2005), the Court followed long established precedent and refused to allow plaintiff's collateral attack against a lender in an FCRA claim against a consumer reporting agency:

> In this case, Mr. Wadley admits that he entered into a loan with FMCC, failed to pay the loan, and that the loan was reported to Equifax as delinquent, but argues that he should not have to pay the loan because his car was defective. Plaintiff offers no evidence to show that Equifax inaccurately reported the status of Mr. Wadley's loan with FMCC. Because Mr. Wadley offers no evidence that Equifax inaccurately reported the loan, he has failed to establish that the consumer report contains inaccurate information, which is an essential element of a FCRA claim. Accordingly, the Court grants Defendant's Motion for Summary Judgment.
>
> The Court grants Defendant's motion because Plaintiff is attempting to collaterally attack the basis of accurately reported information. The FCRA does not provide a cause of action to collaterally attack an accurate credit report. See Dalton, 257 F.3d at 415). Courts have dismissed FCRA claims in several similar cases. See, e.g., Cahlin v. Gen. Motors Acceptance Corp., 936 F.2d

> 1151, 1154 (11th Cir. 1991) (granting summary judgment for a credit reporting agency because the plaintiff conceded that the credit report was accurate); Dauster, 2005 U.S. Dist. LEXIS 22569, Civ. Action No. 04-1401 at 4 (same); Williams v. Colonial Bank, 826 F. Supp. 415, 417-18 (M.D. Ala. 1993) (same); Wright v. TRW Credit Data, 588 F. Supp. 112, 114 (S.D. Fla. 1984) (same).

That District Judge later reached the same conclusion granting the lender's motion for summary judgment:

> Furthermore, the Court grants Defendant's motion because Plaintiff, despite his assertions to the contrary, is attempting to collaterally attack the basis of accurately reported information. The FCRA does not provide a cause of action to collaterally attack an accurate credit report. See Dalton v. Capital Associated Indus., Inc., 257 F.3d 409, 415 (4th Cir. 2001). Courts have dismissed FCRA claims in several similar cases. See, e.g., Cahlin v. Gen. Motors Acceptance Corp., 936 F.2d 1151, 1154 (11th Cir. 1991) (granting summary judgment for a credit reporting agency because the plaintiff conceded that the credit report was accurate); Dauster v. Household Credit Servs., 396 F. Supp. 2d 663, 2005 U.S. Dist. LEXIS 22569, Civ. Action No. 04-1401 at 4 (E.D. Va. July 14, 2005) (same); Williams v. Colonial Bank, 826 F. Supp. 415, 417-18 (M.D. Ala. 1993) (same); Wright v. TRW Credit Data, 588 F. Supp. 112, 114 (S.D. Fla. 1984) (same).

Wadley v. Ford Motor Credit Co., 397 F. Supp. 2d 781, 784 (D. Va. 2005)

In Williams v. Colonial Bank, 826 F.Supp. 415, 418 (M.D.Ala. 1993), *aff'd*, 29 F.3d 641 (11th Cir. 1994), the Court likewise held:

> [I]t is apparent that, with this lawsuit, [plaintiff] is really attempting to attack collaterally the information which underlies the credit report. A credit reporting agency has no duty, as a part of its reinvestigation, to go behind public records to check for accuracy or completeness when a consumer is essentially collaterally attacking the underlying credit information.

See also, Wright v. TRW Credit Data, 588 F.Supp. 112, 114 (S.D.Fla. 1984)(defendant consumer reporting agency's motion to dismiss was granted where plaintiff brought an FCRA action

complaining because his credit report contained an automobile repossession and he claimed the repossession was "an illegal conversion....")

Plaintiff's dispute and instant lawsuit are a transparent and defective effort to collaterally attack liability to Key Bank through the FCRA. As such, Trans Union is entitled to judgment as a matter of law.

**C. Plaintiff Ratified NESCOR's Placement of the Loan with Key Bank**

Moreover, plaintiff ***is*** liable to Key Bank for the home improvement loan for the new windows on his home. Plaintiff admits he asked NESCOR to obtain financing for the windows and acknowledges NESCOR did as it was asked. (Undisputed Facts, paras. 3 – 5). NESCOR advised plaintiff a lender was obtained at the agreed payment and thereafter plaintiff received from Key Bank invoices and then a coupon book. (Id. at paras. 7 – 10) Plaintiff made payments for twenty two (22) months to Key Bank. (Id. at para. 11) There is no basis to find NESCOR's actions in connection with the Key Bank loan **un**authorized; it did exactly what plaintiff requested and agreed, with plaintiff's full knowledge.

In URI Cogeneration Partners L.P. v. Board of Governors for Higher Educ., 915 F. Supp. 1267, 1280-1281 (D.R.I. 1996), the district judge granted summary judgment where, as here, the principal ratified the acts of its agent and "benefited" from the conduct:

> The doctrine of ratification (or affirmance), long recognized by the Supreme Court of Rhode Island, holds that a principal may consent to the acts of an unauthorized agent and thus be bound. Beckwith v. Rhode Island School of Design, 122 R.I. 93, 404 A.2d 480, 485 (R.I. 1979); Sabourin v. LBC, Inc., 731 F. Supp. 1145, 1150 (D.R.I. 1990) (applying Rhode Island law of agency). For ratification to occur, a principal such as the Board must have full knowledge of all the material facts. Beckwith, 404 A.2d at 485. Here, it is uncontroverted that the Board either knew of Kennard's [termination] letter beforehand or was informed of UCP's termination shortly afterward.

> The ratification of an unauthorized agent's actions may be express or implied. Newport Oil Corp. v. Viti Bros., Inc., 454 A.2d 706, 707-708 (R.I. 1983). The standard is notably loose: "Affirmance or ratification may be established by any conduct of the purported principal manifesting that he consents to be a party to the transaction or by conduct, justifiable only if there is ratification." Id. at 708 (citing Restatement (Second) of Agency § 93, at 240 (1957))(hereinafter, Restatement (Agency)). Indicia of ratification include the retention of a benefit to which the principal would have no other claim, id., and the maintenance of a suit on the basis of the agent's actions. Restatement (Agency) § 97, at 250.
>
> Indicia of the Board's consent to be bound by Kennard's actions is as plentiful as sand on a beach. The Board has strenuously maintained, for nearly three years, that it intends to retain the benefits of UCP's termination. Moreover, by defending themselves and URI against this suit, and by filing a counterclaim, the Board has resoundingly affirmed Kennard's firing of UCP, for good or ill.

Here, plaintiff requested NESCOR to locate financing which plaintiff needed to purchase the windows for which he contracted. Plaintiff concedes he asked NESCOR to obtain financing for the windows at an agreed amount. Plaintiff admits he did not know who the lender would/might be. Plaintiff also admits he signed documents which facilitated NESCOR's efforts to obtain a loan. NESCOR placed the loan with Key Bank at the agreed monthly payment. Plaintiff was notified by NESCOR that a lender was obtained and thereafter plaintiff received the invoices and the Key Bank coupon book. (Exhibit "4") Instantly, plaintiff's use and enjoyment of the windows and twenty two (22) monthly payments to Key Bank are the "sands on the beach" which establish without any dispute or doubt plaintiff's ratification and acceptance of the Key Bank loan. Because plaintiff is liable for the loan and wrongly stopped payments, Trans Union's reporting of that history is accurate.

**E. Plaintiff Has Failed To Adduce Evidence of an Inaccuracy or Negligent or Willful Noncompliance with the FCRA.**

**i. Plaintiff's FCRA Claims Fail Because the Key Bank Account Was Accurate.**

Plaintiff bears the burden of proving an inaccuracy, the most fundamental element of an FCRA claim. Spence v. TRW, Inc., 92 F.3d 380, 382 (6th Cir. 1996): ("A showing of inaccuracy is an essential element of a claim under the Fair Credit Reporting Act.") If the information is accurate, the issue of reasonableness is immaterial:

> The Court ... does not need to reach the issue of reasonableness if it finds initially that the report furnished was accurate. Todd v. Associated Credit Bureau Servs., 451 F.Supp. 447 (E.D. PA 1977) Aff'd 578 F.2d 1376 (3rd Cir. 1978); cert den. 439 U.S. 1068, 59 L. Ed. 2d 33, 99 S.Ct. 834 (1979),

*See also* Dalton v. Capital Associated Industries, Inc., 257 F.3d.409, 415 (4th Cir. 2001); Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir. 1994); Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1158 (11th Cir. 1991).

This element is essential for claims under §1681e(b) and §1681i. Kuehling v. Trans Union LLC, 137 Fed. Appx. 904; 2005 U.S. App. LEXIS 13396 (7th Cir. July 6, 2005); Wantz v. Experian Info. Sys., 386 F.3d 829, 834 (7th Cir. 2004) ("In the absence of evidence that [the defendant] disclosed incorrect information... to a third party, [plaintiff] cannot even show that it violated the [FCRA's] reinvestigation requirement."); Dickens v. Trans Union Corp., 2001 U.S. App. LEXIS 19443 *10 (6th Cir. August 23, 2001) ("Even if a showing of inaccuracy is not a predicate to liability [of a §1681i claim], damages would be almost impossible to prove without it."). Trans Union's reporting was accurate and Trans Union is entitled to judgment as a matter of law on all of plaintiff's FCRA claims.

**ii. Trans Union duly Reinvestigated Plaintiff's Single Dispute.**

Even if Trans Union's reporting was arguably inaccurate, plaintiff cannot establish a claim for a negligent reinvestigation violation because Trans Union's procedures were compliant and reasonable. FCRA §1681i(a) imposes a duty upon Trans Union, as a CRA, to "reinvestigate" disputed items of information, and clearly sets forth the steps to reinvestigate. §1681i(a)(1)(A) requires, upon receipt of a dispute directly from the consumer, the CRA to "reinvestigate… and report the current status of the disputed information, or delete the item from the file…" within 30 days of receipt of the dispute. §1681i(a)(2) requires the CRA provide "prompt notice of dispute to furnisher of information." §1681i(a)(3) relates to frivolous or irrelevant disputes. §1681i(a)(4) requires the CRA "review and consider all relevant information submitted by the consumer…" §1681i(a)(5) relates to requirements of information found to be inaccurate or unverifiable as a result of the reinvestigation. §1681i(a)(6) requires the CRA notify the consumer of the results of the reinvestigation. §1681i(c) and (d) provide that a consumer who is dissatisfied with the result of a reinvestigation may add a 100 word statement which must be posted on subsequent reports.

As more fully set forth in the Little Declaration, Trans Union fully complied with all of the FCRA's reinvestigation requirements. Plaintiff adduced no evidence that Trans Union's reinvestigation was negligent, much less that there was any inaccuracy for Trans Union's investigation to uncover. As such, plaintiff can not establish a negligence claim under §1681o. Where, as here, the dispute or accompanying materials do not contain sufficient information to update the disputed accounts, Trans Union sends a notice of dispute to the furnisher pursuant to

§1681i(a)(2). This electronic notice is known as a "Automated Consumer Dispute Verification" ("ACDV").

Trans Union sent an ACDV to Key Bank in accordance with §1681i(a)(2) which duly conveyed plaintiff dispute regarding ownership and also requested verification of the payment history. Key Bank responded by verifying that the Key Bank Loan was correctly reported under plaintiff's name, social security number, telephone number and month and year of birth. Trans Union promptly communicated to plaintiff that the information was verified to remain in his file.

This procedure is entirely consistent with the procedure endorsed by the Second Circuit in Podell v. Citicorp Diner's Club, 112 F.3d 98 (2nd Cir. 1997). In Podell, the Second Circuit affirmed a district court's grant of summary judgment on a reinvestigation claim concerning a reinvestigation which was substantially similar to the facts alleged herein. The plaintiff in Podell asserted that a debt was opened in his name without his knowledge or authorization. 112 F.2d at 100. Podell disputed this information to CRA defendant TRW, and TRW sent notification to the subscriber and the subscriber confirmed the account belonged to the plaintiff. 101 F.3d at 101. The court of appeals affirmed the district court's grant of summary judgment in favor of TRW, describing the reinvestigation and cogently explaining why the reinvestigation satisfied the FCRA:

> The credit reporting agency's "reinvestigation" typically entails sending a Consumer Dispute Verification form ("CDV") to subscribers (usually creditors) that have reported a disputed account. As the district court explained, "the CDV asks subscribers to check whether the information they have about a consumer matches the information on TRW's credit report. If a subscriber fails to respond to a CDV or indicates that TRW's account information is incorrect, TRW deletes the disputed information." *Podell [v. Citicorp Diner's Club], 914 F. Supp. [1025,] 1028 [(S.D. NY 1997) (the district court opinion)].* If reinvestigation does not resolve an account dispute, consumers may file with their

> credit report "a brief statement setting forth the nature of the dispute," *15 U.S.C. § 1681i*(b), which must be included "in any subsequent consumer report containing the information in question" along with a notation that the matter is disputed by the consumer. *15 U.S.C. § 1681i*(c). 101 F.3d at 101.

Similarly, the Sixth Circuit in Dickens, *supra*, at *11, held as follows:

> ...Trans Union reinvestigated Dickens's Bank One account via an electronically transmitted dispute verification form. Bank One verified that the account had been reported accurately, and Trans Union notified Dickens of the verification by sending him a file disclosure. Other than simply stating that Trans Union did not adequately and reasonably reinvestigate his dispute, Dickens points to nothing in the record to show that Trans Union's reinvestigation somehow fell short of the §1681i's requirements....

Instantly, Trans Union complied fully with FCRA §1681i(a), as described above and plaintiff has adduced no evidence to the contrary.

**iii. Plaintiff Failed to Prove FCRA Willfulness.**

Here, even if the Key Bank account was not accurate, which of course it is, plaintiff has not and cannot maintain a claim that Trans Union's conduct was willful. Plaintiff completely failed to adduce evidence that Trans Union's procedures willfully violated the FRCA. Plaintiff has not served written discovery, noticed a deposition or designated an expert. The FCRA specifically limits punitive damages to circumstances where the violation of a requirement of the FCRA was "willful." *See* §1681n, Civil Liability for Willful Noncompliance. Courts have consistently disallowed punitive damages absent special and aggravating circumstances. Instantly, Trans Union's processing of plaintiff's single attorney dispute was compliant. Nothing was concealed or misrepresented. After Key Bank verified the accuracy of the reporting, Trans Union informed plaintiff the Key Bank Loan information remained on his file. Despite receipt of

an investigator's name and direct dial phone number, neither plaintiff nor his lawyer ever called or wrote the Trans Union operator who handled the dispute to question the result.

In Casella v. Equifax Credit Info. Servs., 56 F.3d 469 (2nd Cir. 1995)(Frank J. Coffin sitting by designation), the Court of Appeals, citing long established FCRA punitive damages principles, affirmed the trial court's grant of summary judgment stating as follows:

> [Defendants'] course of conduct does not support the kind of 'conscious disregard' or 'deliberate and purposeful' actions necessary to make out a claim for willful noncompliance under the FCRA. 56 F.3d at 476 (citations omitted).

In Cousin, *supra,* the Fifth Circuit vacated and rendered a jury's punitive damages verdict, stating there was no showing of wilfulness:

> … "willful" is a word of many meanings and that its construction is often influenced by its context. *See* Pinner, 805 F.2d at 1263. In concluding that the consumer reporting agency in that case did not commit a willful violation, we remarked that there was no evidence suggesting that the agency "knowingly and intentionally committed an act in conscious disregard for the rights of others." Id.; see also Philbin, [*supra*] 101 F.3d at 970; Stevenson, 987 F.2d at 293. Generally, courts have allowed a willful noncompliance claim to proceed where a defendant's conduct involves willful misrepresentations or concealments. See Pinner, 805 F.2d at 1263. In those cases, a consumer reporting agency has typically misrepresented or concealed some or all of a credit report from a consumer. See id. (discussing Millstone v. O'Hanlon Reports, Inc., 528 F.2d 829 (8th Cir.1976)); see also Stevenson [v. TRW, Inc., 987 F.2d 288, 294 (5th Cir. 1993)].

*See also* Dalton v. Capital Associated Industries, Inc., 257 F.3d.409, 418 (4th Cir. 2001) and Richardson v. Fleet, 190 F. Supp. 2d 81, 89 (D. Mass. 2001)(where summary judgment was granted in favor of a consumer reporting agency because: "the plaintiffs' contention that Equifax failed to correct an error in their credit reports after receiving several notices does not constitute evidence of a willful violation.")

Here, as in Casella, Dalton and Cousin, nothing was concealed or misrepresented to Plaintiff. Trans Union did not disregard Plaintiff's FCRA rights. Trans Union promptly responded to his single dispute and sent him the reinvestigation results with the verification. There is no evidence that Trans Union acted in conscious disregard of its duties under the FCRA to reinvestigate his single dispute or in connection with the furnishing of his file. Plaintiff adduced no evidence to prove otherwise. Therefore, Trans Union is entitled to summary judgment on Plaintiff's punitive damages claims.

**F. Trans Union is entitled to summary judgment on plaintiff's Defamation claim.**

As noted above, plaintiff's defamation claim fails because the Key Bank reporting was accurate. In the alternative, Trans Union is entitled to a qualified immunity under the FCRA, §1681h(e), which provides in pertinent part:

> (e) Limitation of liability. Except as provided in sections 616 and 617 [§§1681n and 1681o], no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency... except as to false information furnished with malice or willful intent to injure such consumer.

(*See* Thornton v. Equifax, Inc., 619 F.2d 700, 703 (8th Cir.1980), *cert. denied*, 449 U.S. 835 (1980); Bloom v. I.C. Systems, Inc., 972 F.2d 1067, 1069 (2nd Cir. 1992); Cousin v. Trans Union Corp., 246 F.3d 359, 375-376 (5th Cir. 2001). As set forth in Thornton, *supra*,

> Section 1681h(e) is recognized as providing qualified immunity for consumer reporting agencies with an exception from such qualified immunity being made for actions pursuant to sections 1681n and 1681o.... **Such an exception was not meant to lessen the standard necessary to overcome this qualified immunity in defamation actions.** (emphasis in original) (**Bold** supplied) 619 F.2d at 703

Plaintiff has arguably alleged but cannot prove Trans Union acted with malice or willful intent to injure him. As set forth *supra*, even if Trans Union's conduct was a mistake, and even if it was a willful violation of the FCRA, which is denied, plaintiff has not adduced a scintilla of evidence of malice or willful intent to injure him. Thus, Trans Union is entitled to summary judgment on plaintiff's claim of defamation.

## III. CONCLUSION

For all the above reasons and authorities, Defendant, Trans Union LLC, respectfully moves this Court to enter summary judgment in its favor, and to dismiss Plaintiff's claims with prejudice.

Respectfully submitted,

CONRAD M. CUTCLIFFE
KEVIN GLAVIN
CUTCLIFFE, GLAVIN & ARCHETTO
155 S. Main St., Suite 300
Providence, RI 02903-2963
(401) 454-1900; Fax: (401) 331-7001

*Of Counsel:*
Bruce S. Luckman
Timothy P. Creech
KOGAN, TRICHON & WERTHEIMER, P.C.
1818 Market St., 30th Floor
Philadelphia, PA 19103
(215) 575-7600; Fax: (215) 575-7688
*Counsel for Defendant, Trans Union LLC*
DATED: May 12, 2006

CERTIFICATION

I, the undersigned, hereby certify that a true and accurate copy of the withn was mailed to Christopher M. Lefebvre, Esquire, P.O. Box 479, Pawtucket, Rhode Island 02862 on this 12 day of May, 2006.

______________________