**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **OVIDIO A. DEANDRADE,** | ) | |
| **Plaintiff,** | ) | **CIVIL NO. 04-534-S** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **TRANS UNION, LLC,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S OBJECTION TO TRANS UNION, LLC.'S MOTION FOR SUMMARY JUDGMENT**

Now comes Ovidio A. Deandrade, Plaintiff in the above entitled matter, and respectfully objects to the motion for summary filed by Trans Union, LLC.'s ("Trans Union") Motion for Summary Judgment. A memorandum an support of said oppsition is attached hereto and incorporated by reference.

**WHEREFORE** Plaintiff prays that the Motion Be denied and that the matter be placed on the trial calender.

Respectfully submitted;

Christopher M. Lefebvre
PO Box 479
Pawtucket, RI 02862
(401) 728-6060
(401) 728-6534 fax
Bar# 4019

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **OVIDIO A. DEANDRADE,** | ) | |
| **Plaintiff,** | ) | **CIVIL NO. 04-534-S** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **TRANS UNION, LLC,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S OBJECTION TO TRANS UNION, LLC.'S MOTION FOR SUMMARY JUDGMENT**

Now comes Ovidio A. Deandrade, Plaintiff in the above entitled matter, and respectfully objects to the motion for summary filed by Trans Union, LLC.'s ("Trans Union") Motion for Summary Judgment. A memorandum an support of said oppsition is attached hereto and incorporated by reference.

**WHEREFORE** Plaintiff prays that the Motion Be denied and that the matter be placed on the trial calender.

Respectfully submitted;

Christopher M. Lefebvre
PO Box 479
Pawtucket, RI 02862
(401) 728-6060
(401) 728-6534 fax
Bar# 4019

## CERTIFICATION

I, the undersigned, do hereby certify that on June 12, 2006, a true and accurate copy of within Objection was mailed to:

Bruce S. Luckman
Timothy P. Creech
TRICHON, KOGAN,
& WERTHEIMER, P.C.
1818 Market St. 30th Floor
Philadelphia, PA 19103

S:\WPFILES\Fair Credit Reporting Cases\Deandrade vs. Equifax, TU, KeyBank\Objection MSJ.wpd

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| OVIDIO A. DEANDRADE, Plaintiff, | ) | CIVIL NO. 04-534-S |
| v. | ) | |
| TRANS UNION, LLC, Defendant. | ) | |

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO TRANS UNION, LLC.'S MOTION FOR SUMMARY JUDGMENT

Now comes Ovidio A. Deandrade, Plaintiff in the above entitled matter, and respectfully submits the following as his memorandum of law in opposition to Trans Union, LLC.'s ("Trans Union") Motion for Summary Judgment.

## I. INTRODUCTION

It's simply incredulous that Trans Union would have the audacity to ask this Court to conclude via summary judgment that the Plaintiff had a contractual obligation to Keybank and therefore it's reporting of the obligation was accurate. Trans Union has done a remarkable job both ignoring and attempting to sanitize the detailed allegations of fraud ( 49 pages worth) surrounding the transaction that resulted in a mortgage being placed on the Plaintiff's residence in favor of KeyBank. Trans Union admits to both receiving all this documentation *prior* to the initiation of this lawsuit and not forwarding the complaint and the attachments to the furnisher during the investigation process. Trans Union chose to streamline the process by summarizing the 49 pages and the data contained therein into a simple 2 digit code, which basically told the furnisher that "Plaintiff states that the account is not his." No mention of the allegations of fraud or the circumstances surrounding the dispute were forwarded by Trans Union during it's reinvestigation

process. Trans Union's motion must be denied for the reasons articulated below.

## II. FACTS

There is no dispute that the Plaintiff contracted with a company called NESCOR for the installation of replacement windows at his residence. NESCOR was to arrange for the financing and did present documents to the Plaintiff and his spouse which they voluntarily and willingly signed granting a mortgage on their residence in favor of Conseco. Thereafter, Plaintiff and his spouse did not sign any other documentation in relation to the installation of windows by NESCOR. Plaintiff and his spouse were dissatisfied with the terms of the Conseco loan and complained to NESCOR about certain misrepresentations regarding the monthly payment amount for the windows. NESCOR promised to fix the problem and took steps to obtain alternate financing at more favorable payment terms. NESCOR took immediate steps to terminate the Conseco mortgage transaction and sent the Plaintiff and his spouse a check for $11,722.30 so they could payoff the balance due Conseco.

Shortly thereafter NESCOR notified Plaintiff and his wife that alternative financing for the windows had been obtained. Plaintiff began receiving a payment coupon book from KeyBank in an amount that was consistent with the terms of the agreement with NESCOR. Plaintiff made voluntary payments to KeyBank. Sometime thereafter, Plaintiff's spouse contacted KeyBank and requested copies of any loan documentation involving her window transaction with NESCOR. KeyBank obliged and forwarded a copy of a note, mortgage and other documentation in relation to a secured mortgage transaction between Plaintiff, his spouse and KeyBank. Plaintiff and his spouse were shocked to see that a mortgage had been placed on their residence in favor of KeyBank. Upon review of the closing documentation provided by KeyBank, Plaintiff readily determined that all the signatures on the loan and mortgage documentation were not genuine and procured by fraud.

Plaintiff believes that NESCOR fraudulently signed all the KeyBank documentation.

A Superior Court lawsuit was filed against KeyBank asking for declaratory relief relative to the validity of the mortgage. Plaintiff immediately stopped making any payments to KeyBank determining that he and his spouse had absolutely no contractual liability to this company. Not surprisingly, KeyBank began to report the non payment of it's obligation to the three major credit bureaus which adversely affected Plaintiff's credit score. In response thereto, Plaintiff instructed his attorney to send a letter to the three major credit bureaus, Trans Union, Experian and Equifax, in July of 2004, asking that they conduct an investigation regarding the derogatory payment information that was being reported by KeyBank. The "Reinvestigation Letter," sent by certified mail, attached 49 pages of documentation involving a pending Rhode Island Superior Court action, and detailed alleged fraudulent practices by a home improvement contractor resulting in a mortgage being placed on his home in favor of KeyBank. The letter asked all three bureaus to conduct a reasonable investigation and requested that they *"do not verify the accuracy of the KeyBank tradeline until you receive sufficient information to satisfy you that the signatures on both the promissory note and mortgage are valid. My clients believe that they are a victim of fraud regarding this transaction."*

Within days of receiving the Reinvestigation Letter, Experian correctly deleted the disputed KeyBank trade line from Plaintiff's consumer report. Trans Union and Equifax did not remove the tradeline and the present litigation was initiated. The Plaintiff has since settled his claims against the Defendants Equifax and KeyBank. The primary claim against Trans Union is that it violated the FCRA §1681i by failing to conduct a reasonable investigation in response to the letter and extensive documentation received by it in July 2004. Trans Union did no independent investigation at all, ignored all the documentation provided by the Plaintiff in support of his claim that the

Keybank credit entry was fraudulent and simply parroted the response received back from Keybank indicating that the account was valid.

Plaintiff had enjoyed an excellent credit rating prior to 2004, but had a mortgage application denied as a result of the erroneously reporting of the disputed KeyBank obligation by Trans Union. He also suffered other loss of credit, loss of the ability to purchase and benefit from credit, mental and emotional pain and anguish and the humiliation and embarrassment of credit denials. Plaintiff has consistently maintained in both the Superior Court and this Federal Court litigation that both he and his wife never signed any documents promising to pay Keybank a penny nor authorizing them or any other individual or company to place a mortgage on their home.

## III. ARGUMENT

### A. Standard for Summary Judgment

Plaintiff does not take issue with the standard articulated by the Defendant relative to it's burden under Rule 56 of the Federal Rules of Civil Procedure. Nevertheless, there is clearly a material issue of fact regarding Plaintiff's liability for the KeyBank loan and mortgage. This fact alone defeats Trans Union request for summary judgment. There is clearly substantial evidence from which a jury could conclude that Plaintiff had no obligation to KeyBank and Trans Union failed to properly and adequately investigate Plaintiff's dispute as articulated in his July 2004 correspondence. Thus, summary judgment should be denied.

### B. Congress Enacted the FCRA as One Component of its Overall Plan to Strengthen the Free Market Economy By Insuring the Flow and Availability of Accurate Credit Information.

Congress enacted the FCRA in 1970 as Title VI of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601-1693r (CCPA), the plenary regulation of the national consumer credit industry.

Consumer credit has expanded nearly three hundred fold in the last sixty years and is now one of the largest sectors of the national economy. In view of the demonstrated potential for error in operating this informational maze, Congress adopted the FCRA with the explicit recognition that the health of the consumer banking system is "dependent upon fair and accurate credit reporting" and that "[i]naccurate credit reports directly impair the efficiency of banking system." 15 U.S.C. § 1681(a)(1). A recurring theme at the heart of the CCPA is that the dissemination of accurate credit information is essential to maintain the vitality of the credit granting system for the benefit of creditors and consumers alike.

The Supreme Court succinctly stated this guiding principle of this Congressional philosophy thirty years ago in its initial and seminal teaching under the CCPA: "[B]lind economic activity is inconsistent with the efficient functioning of a free economic system such as ours." Mourning v. Family Publication Service, Inc., 411 U.S. 356, 364 (1973). The 1996 amendments to the FCRA were adopted with the recognition that credit decisions made in ignorance or without the benefit of accurate information, whether made by credit grantors or consumers, undermine the vitality of the consumer economy.

**C. Congress Adopted The 1996 FCRA Amendments With The Express Purpose To Improve The Accuracy of Credit Reporting By Bringing Furnishers Of Information Within The Statute.**

Unfortunately, despite the intent and best efforts of Congress in adopting the FCRA, accurate information was not being consistently provided by the consumer reporting system to its credit granting clientele. In the deliberations that culminated with enacting the 1996 amendments, Congress was presented with the staggering statistic that nearly half of all consumer reports (48%) maintained by the three major CRAs contain inaccurate information. S. Rep. 103-209, *supra*, at 3.

By 1996, Congress was poised to reform and strengthen the credit reporting system that it had left essentially untouched for twenty-five years. *Id.* at 2.

In 1996 Congress amended the FCRA. Consumer Credit Reporting Reform Act of 1996, Title II, Subtitle D, Ch. 1, of the Omnibus Consolidated Appropriations Act for Fiscal Year 1997 (P.L. 104-208) (Sept. 30, 1996). Among the changes made to the FCRA are two, one which is relevant here. First, Congress enacted an entirely new section, codified in § 1681s-2, imposing on furnishers ( like KeyBank) of information detailed and specific responsibilities, including those in subsection (b). Second, and of paramount importance to this litigation, Congress expanded and revamped the consumer dispute resolution process of § 1681i, including enacting § 1681i(a)(2), which compels the CRA to promptly notify the furnisher of disputed information and triggers the furnisher's corresponding duties under § 1681s-2(b).

The FCRA imposes responsibilities on three categories of persons: "users," "credit reporting agencies," and "furnishers." "Users" are permitted to access and "use" a consumer's credit report only under certain circumstances. (e.g. 15 U.S.C. §§ 1681b, 1681e). "Credit reporting agencies" are subject to most of the requirements within the FCRA. The statute details to whom and how a credit report may be delivered (15 U.S.C. § 1681(b)); the disclosures required from the credit reporting agencies (15 U.S.C. § 1681(g)) and how these may be made (15 U.S.C. § 1681(h)). However, the most common claims under the FCRA, with the present case as an example, are those against the CRAs and those against the Furnishers[1]. There are two provisions within the FCRA which are applicable to the determination of a CRA's liability in an accuracy case, 15 U.S.C. §§1681e(b) and

[1] Plaintiff did allege an S-2(b) claim against furnisher KeyBank which has been settled. As part of the settlement KeyBank discharged the note and released it's mortgage on the Plaintiff's property.

1681i. Plaintiff has only alleged a violation of the later section §1681i(a). This provision in relevant part requires that: If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge[.]

**D. Trans Union's Assertion That Plaintiff Is Collaterally Attacking The KeyBank Mortgage Under The Guise Of An FCRA Claim is Frivolous**

Plaintiff agrees with the general principle espoused by Wadley v. Equifax Info Services LLC, 396 F.Supp. 2d 663, 664-666 ( D. Va. 2005) cited by Trans Union, that it is inappropriate for a consumer who acknowledges the validity of a loan and thereafter tries to dispute the obligation under the FCRA because of some dissatisfaction with the loan terms or the product purchased with the loan proceeds. Every other case cited by Trans Union in this section of it's memorandum deals with a situation where the existence of the underlying transaction and or obligation *was not* in dispute. However, the record in this case is absolutely crystal clear that the Plaintiff has consistently alleged that the purported loan with KeyBank was fraudulently procured. The Plaintiff and his spouse have never acknowledged the validity of any loan obligation in favor of KeyBank. Throughout it's entire memorandum, Trans Union advocates that because the Plaintiff admitted to receiving windows and had an obligation to pay NESCOR for them that it was simply okay for someone ( presumably NESCOR or it's agents(s)) to forge Plaintiff's name to a note and mortgage instrument to secure payment of the debt. According to Trans Union, since the ends justified the means, that is NESCOR got the money they deserved, the Plaintiff should not be complaining. This suggestion is simply outrageous.

**E. Trans Union's Ratification Argument Is Equally Frivilous**

Defendant's novel argument relative to ratification must also fail. First and foremost, Defendant has not submitted any evidence from NESCOR or any third party to identify the existence of the so called agent. Though Plaintiff and his spouse firmly believe that NESCOR forged documentation in favor of KeyBank, Trans Union has produced no evidence to establish the identity of the agent- a crucial fact necessary to substantiate it's agency theory. More importantly, as Judge Lagueux articulated in <u>URI Cogneration Partners L.P. v. Board of Givenors for Higher Education,</u> 915 F.Supp. 1267, 1280-1281 (D.R.I. 1996) relied on by the Defendant, " For ratification to occur, a principle....must have full knowledge of all the material facts". In this case it is once again crystal clear that the so called principle- Mr. Deandrade- was totally unaware that the so called agent ( the mystery person) was going to forge his signature to obtain a secured mortgage loan! Further in *URI*, the parties had entered into a detailed written contract which outlined the responsibilities of the respective parties. In this case no such contract exists between Mr. Deandrade and the phantom agent.

Trans Union's focus on Plaintiff's "use and enjoyment" of the windows and the "22 monthly payments made to KeyBank" to establish an agency theory is simply misguided. It may be that Plaintiff and his wife have some obligation to <u>NESCOR</u> for the windows. However, Plaintiff <u>did not</u> ask Trans Union to investigate a debt due NESCOR . This factual undisputed distinction is fatal to all of Trans Unions claims. NESCOR may have a potential claim against Plaintiff and his wife ( which of course would be subject to counterclaims for fraud etc) if NESCOR chooses to pursue the matter. Unfortunately for Trans Union, this contingency does not transmute into a legal binding obligation to KeyBank. The record in this case clearly and convincingly establishes that Trans Union knew that Plaintiff was disputing the existence of any debt <u>due</u> KeyBank. The fact that Mr.

Deandrade knew that NESCOR was going to arrange the financing for the windows does not change the analysis. Trans Union's agency and ratification theories are borderline frivilous.

**F. Plaintiff Has Shown Evidence Of Inaccuracy And Negligent Or Willfull Noncompliance With The FCRA By Trans Union**

**i. Plaintiff's Claim that the reporting of the KeyBank Account was not accurate survives summary judgment**

For the most part Plaintiff does not quarrel with the case law cited by the Defendant relevant to their alleged "accuracy defense." Nevertheless, in light of the record in this case, Plaintiff takes umbrage with Trans Union's bald assertion that they are entitled to summary judgment on this issue. For the reasons argued ad nauseam throughout this opposition, Plaintiff has clearly preserved the issue of the accuracy of the reporting of the KeyBank debt to survive summary judgement on this issue. Trans Union can not cite to anything in the record even remotely suggesting or inferring that the Plaintiff claimed or admitted to having any contractual liability to KeyBank. Accordingly, summary judgment must be denied.

**ii. A reasonable fact finder could conclude that trans union negligently violated 15 U.S.C. §1681i.**

Trans Union contends that the fact that it forwarded the Plaintiff's dispute to KeyBank was sufficient to satisfy its "reinvestigation" obligation. It did not have to act on the dispute. Trans Union asks the Court to permit it to forgo its own statutory obligations so long as it relied on KeyBank to perform its own. All of these arguments are regularly rejected and are inconsistent with nearly all of the case law under the FCRA.

Trans Union violated the FCRA when it failed to conduct any investigation of the Plaintiff's July 2004 dispute. It did so as a matter of law. In each of the relevant sections of its brief, Trans

Union contends that it did not violate the FCRA because it relied on the response and reporting of KeyBank. In essence, it rejected the Plaintiff's July 2004 dispute and refused to consider the 49 page Superior Court complaint and attached documentation because KeyBank responded to its ACDV with information which was inconsistent with this documentation. It is long established that Trans Union has its own duties under the FCRA and is prohibited by law from solely relying on and parroting its furnisher.

This is not a new issue for this defendant. In case after case, Trans Union has been told by both Circuit and District judges alike that its conduct violates the FCRA. The seminal and still most relevant case on this issue is Cushman v. Trans Union Corp., 115 F.3d 220 (3rd Cir. 1997), a case against this very defendant. In Cushman, Trans Union Corporation contended that

> 1681i(a) did not impose on it an obligation to do any more than perform the reinvestigation it performed in this case. That is, TUC believes that when a consumer informs a consumer reporting agency that information contained in her consumer report is inaccurate, the consumer reporting agency is obliged only to confirm the accuracy of the information with the original source of the information. According to TUC, it is never required to go beyond the original source in ascertaining whether the information is accurate.

However, as the Third Circuit in Cushman explained, "This position has been rejected by the United States Courts of Appeals for the Fifth and Seventh Circuits. *See* Henson, 29 F.3d at 286-87; *Stevenson v. TRW Inc.*, 987 F.2d 288, 293 (5th Cir.1993)." The Third Circuit stated:

> The "grave responsibilit[y]" imposed by § 1681i(a) **must consist of something more than merely parroting information** received from other sources. Therefore, a "reinvestigation" that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute. (emphasis added). 115 F.3d at 225

While this is the first Circuit decision in such regard against Trans Union, the Sixth Circuit was actually the first to explain the CRA responsibility to conduct an investigation which does not

merely rely on the furnisher. Bryant held,

> In sum, we hold that a consumer reporting agency does not necessarily comply with section 607(b) by simply reporting in an accurate manner the information it receives from creditors.[2]

This is consistent with the law in Trans Union's many other cases. *See* Guimond v. Trans Union, 45 F. 3d 1329 (9th Cir. 1995); McKeown v. Sears Roebuck, et als., 335 F. Supp. 2d 917 (W.D. Wisc. 2004); Crane v. Trans Union, 282 F. Supp. 2d 311, 318 (E.D. Pa. 2003); Lawrence v. Trans Union, 296 F. Supp. 2d 582, 589-590 (E.D. Pa. 2003); Soghomonian v. United States, 278 F.Supp. 2d 1151, 1156-1158 (E.D. Ca. 2003)[3]; Evantash v. G.E. Capital Mortgage Serv., Inc., 2003 WL 22844198, *5 (E.D. Pa. 2003); O'Connor v. Trans Union, 1999 WL 773504 (E.D. Pa. 1999). *See also* Sampson v. Equifax, 2005 WL 2095092, *4-5 (S.D. Ga. 2005). The duties of Trans Union are independent of those of KeyBank. Both credit industry participants, have a role to play in assuring compliance and accuracy under the FCRA.

Beyond the established conclusion that Trans Union may not simply "parrot" the response of its furnisher customer, there are other issues in this case which would render summary judgment impossible. Unlike even the minority view cases cited by Trans Union, in the present case there were reasons known to Trans Union by which it should have questioned the reliability of its customer as a reporting entity. First, Trans Union actually had in its possession, sent by the attorney for the Plaintiff, a detailed civil complaint filed in the Rhode Island Superior Court indicating that the Plaintiff was a victim of a fraudulent mortgage placed on his home in favor of KeyBank. Trans

---

[2] Bryant 689 F.2d at 78.

[3] The case later went to trial and a jury verdict was entered against Trans Union for $1,000,000. On appeal, the case settled. One term of the settlement was that the Plaintiff join Trans Union in obtaining the vacation of this order denying summary judgment. However, the well-reasoned opinion is still useful and available for persuasive consideration.

Union absolutely ignored this salient fact in it's memorandum. This information provided to Trans Union in the form of a legal pleading was inconsistent with the data that was being reported by KeyBank. Trans Union followed its own rules and policies and ignored the Plaintiff's dispute and the KeyBank lawsuit document. This is the same misconduct that has been criticized in other Trans Union cases in which Court's rejected its prayer for summary judgment. Soghomonian v. United States, 278 F.Supp. 2d at 1156-1157; Crane v. Trans Union, 282 F. Supp. 2d 315-316; Lawrence v. Trans Union, 296 F. Supp. 2d at 589-590. In these and other cases, Trans Union refused to consider and then ignored the documents offered by the Plaintiff and instead relied blindly on the ACDV response provided through the electronic exchange with the furnisher. Consistent with its policies, Trans Union never contacted the furnisher to inquire further about the documents themselves, let alone inquired of some other source ( for example the notary public who supposedly witnessed the signature of the Plaintiff).

Even beyond its systematic refusal to consider documents from consumers which contradict the ACDV response of its customers, Trans Union also violated § 1681i when it refused and failed to forward the lawsuit documentation itself, certainly "relevant information" to KeyBank. It may well have been that had Trans Union done so, the furnisher may have been awakened to its misconduct. Soghomonian v. United States, 278 F.Supp. 2d at 1156-1157. Simply put, Trans Union summarily decided that KeyBank's verification of a name and social security on an account-without any investigation into the authenticity of the signature on the loan documentation which was specifically requested of TU in the pre litigation dispute letter sent to them- was satisfactory and more reliable then the detailed allegations of fraud contained in a Superior Court pleading.

Trans Union appears to offer a general principle of "reliability" of its customer and expects

the Court to skip the logical step of such application to the specific facts and furnisher in this case. It is likely reasons such as this one that the "reliability" of a furnisher as a reporting source to a CRA has previously been held to be inherently a question of fact. Campbell v. Chase Manhattan Bank, USA, N.A., 2005 WL 1514221, *13 (D. N.J. 2005).

Trans Union has not argued that the cost of correctly and lawfully investigating Mr. Deandrade's dispute would have been costly or difficult. Accordingly, with the Plaintiff's damages more than minimal, Trans Union's procedures were not reasonable. In Cushman v. Trans Union, 115 F.3d 220 (3rd Cir. 1997), the Third Circuit explained:

> We assume for the sake of argument, as the Seventh Circuit concluded, that the costs of requiring consumer reporting agencies to go beyond the original source of information as an initial matter outweigh any potential benefits of such a requirement. Thus, we can assume that absent any indication that the information is inaccurate, the statute does not mandate such an investigation. However, as the *Henson* court explained, once a claimed inaccuracy is pinpointed, a consumer reporting agency conducting further investigation incurs only the cost of reinvestigating that one piece of disputed information. In short, when one goes from the §1681e(b) investigation to the § 1681i(a) *re* investigation, the likelihood that the cost-benefit analysis will shift in favor of the consumer increases markedly.

**iii. A reasonable jury could find that trans union's violations of the FCRA were willful.**

Despite frequent admonitions that "summary judgment is 'seldom appropriate' on whether a party possessed a particular state of mind," Trans Union asks the Court to take from the jury the question of whether its conduct and policies were willful. The Court should decline this invitation to narrowly and unreasonably constrain the FCRA, and should accordingly deny Trans Union's motion. Under the FCRA, a person who "negligently" violates its provisions is liable for actual

damages under 15 U.S.C. §1681o. If a jury finds that the violations were "willful", then the defendant can be liable for punitive damages under 15 U.S.C. §1681n. While the standard for "willfulness" is certainly higher than that for "negligence", Trans Union is incorrect if it believes that the bar for such allegations is as high as it contends. Unlike common law torts:

> A showing of malice or evil motive is not required to prove willfulness under the Act. *See, e.g., Stevenson v. TRW, Inc.*, 987 F.2d 288, 294 (5th Cir.1993); *Yohay v. City of Alexandria Employees Credit Union*, 827 F.2d 967, 972 (4th Cir.1987). The plaintiff must only show that the defendant "knowingly and intentionally committed an act in conscious disregard for the rights" of the consumer. *Pinner v. Schmidt*, 805 F.2d 1258, 1263 (5th Cir.1986). *See also Stevenson*, 987 F.2d at 294; *Yohay*, 827 F.2d at 972.[4]

In the present case, there is sufficient evidence that Trans Union willfully committed the violation alleged. Trans Union had actual knowledge that its reporting was inaccurate after Mr. Deandrade via counsel provided his dispute ( 49 pages worth). Furthermore, Trans Union has admitted that it did not bother to send all the documentation referenced in the Superior Court complaint to KeyBank so they could perhaps verify signatures and have sufficient data in front of them to investigate the claim. A jury could be offended with the notion that a consumer reporting agency can simply ignore a consumer who undertakes the daunting task of retaining a lawyer, filing a lawsuit wherein a jury demand is requested, regarding an alleged fraudulent mortgage on an asset which is generally deemed to be sacred to any individual-one's principle residence. A jury could so conclude that Trans Union's actions were willfull under the FCRA.

There is no evidence and Defendant does not contend that its conduct in this case was outside of its standard practices and procedures. In fact, it contends just the opposite. As the District Court

---

[4] Dalton, 257 F.3d at 418.

in Lawrence explained :

> This defendant [Trans Union] made the same argument objecting to punitive damages in a similar case captioned Crane v. Trans Union, LLC, 2003 WL 22172346 (E.D. Pa. Sept. 16, 2003). In Crane, Judge Dalzell explained that defendant's failure to transmit plaintiff's supplemental documentation to a creditor and defendant's practice of merely parroting information without verifying its accuracy, could be found by a reasonable jury to be knowing or reckless violations of the FCRA. *Id.* Plaintiff in the present case objects to the same practices by the same defendant. The claim for punitive damages is not appropriate for summary judgment. 296 F. Supp. 2d at 590.

*See also e.g.* Soghomonian v. United States, 278 F.Supp. 2d at 1156-1157; Crane v. Trans Union, 282 F. Supp. 2d 315-316. *See also* O'Connor v. Trans Union Corp., 1999 WL 773504 (E.D.Pa. Sept. 28, 1999), 1999 U.S. Dist. LEXIS 14917. Trans Union cannot credibly argue that its conduct in this case was other than as it fully intended. It's employees did not make a mistake in how they followed the Defendant's established polices. They did exactly as the defendant had intended. When the failure of a Defendant's actions are the result of adopted systematic procedures which are unreasonable, willfulness will remain a question of fact. McKeown v. Sears Roebuck, et als., 335 F. Supp. 2d at 941.

In Dalton, the Fourth Circuit explained that it would be rare for summary judgment to be appropriate for the determination of willfulness. However, in that case, the Court's denial of punitive damages made sense. In explaining the unique and unusual facts in that case, the Fourth Circuit listed several of the facts which would support a finding of willfulness:

> Dalton has not shown, for example, that CAI was aware that its subvendors relied upon informal legal opinions from court clerks. There is no evidence that other consumers have lodged complaints similar to Dalton's against CAI. Indeed, CAI had used SafeHands for about a year and had found the firm to be reliable. Further, CAI corrected its mistake one day after Dalton challenged the accuracy of the report. *Id.* at 418.

As evidenced by the numerous published opinions cited herein, Trans Union has been subject of numerous similar complaints from other consumers and critical decisions and warnings from other Courts. Additionally, Trans Union did not correct the mistake in one day, or even one week, or one month. It's competitor, Experian who received the identical letter and 49 pages of documentation immediately removed the KeyBank entry without the necessity of filing any lawsuit! On the contray, Trans Union refused to correct any of the inaccuracies until after this lawsuit was filed. This itself is sufficient to establish willfulness. Soghomonian v. United States, 278 F.Supp. 2d at 1162; Sampson v. Equifax, 2005 WL 2095092, *7 (S.D. Ga. 2005); Spector v. Equifax Info Services, 338 F.Supp. 2d 378, 389 (D. Conn. 2004). A reasonable jury could certainly find that Trans Union's conduct was willful. Accordingly, its motion should be denied.

**G. Plaintiff's Defamation Claims Are Viable**

There currently exists two lines of case law, one favoring the credit industry and providing a qualified immunity for all communications, and the second line of cases liberally construing section 1681h[e] in favor of consumers and refusing to read out portions of the language of section 1681h[e]. Some Courts have concluded that the language of section 1681h[e] limited the qualified immunity to those communications under sections 1681g, 1681h and 1681m, as stated in section 1681h[e]. Thus, the qualified immunity under section 1681h[e] is confined to those communications which the furnisher or credit reporting agency have directly with the consumer and does not apply to communications in the conduit between the reporting subscriber, through the agency and then onto a second subscriber-user of credit report data.

Many Courts have refused to dismiss state law and common law claims in the nature of

negligent credit reporting,[5] defamation, negligent enablement of the imposter,[6] invasion of privacy, etc.[7] The Fair Credit Reporting Act does not preempt state or common law claims as long as the state or common law is not inconsistent with the Fair Credit Reporting Act.[8] The Fair Credit Reporting Act does not preempt a state law cause of action for defendant's negligence in communicating erroneous credit data about a consumer.[9]

Historically, courts accepted industry's position that section 1681h[e] provided a "safe harbor" and "qualified immunity" from certain state law actions. Over time that position has begun to be shown as flawed. Kronstedt v. Equifax, 2001 U.S.Dist.Lexis 25021 [U.S.D.C. W.D. Wisc. 2001]; McAnly v. Middleton and Reutlinger, P.S.C., 77 F.Supp. 2d 810, 814 [U.S.D.C. W.D. Ky.

---

5 Amber Dawn Williams v. Experian, 2002 Westlaw 31133235 [U.S.D.C. E.D. Tex. 2002], citing the decisions in Whitesides v. Equifax, 125 F.Supp.2d 807, 813 [U.S.D.C. W.D. La. 2000] [Judge Walter], correcting a misinterpretation of section 1681h[e]. In accord: Kronstedt v. Equifax, 2001 U.S.Dist.Lexis 25021 [U.S.D.C. W.D. Wisc. 2001]; McAnly v. Middleton & Reutlinger, P.S.C., 77 F.Supp. 2d 810, 814-815 [U.S.D.C. W.D. Ky. 1999]; Yeager v. TRW, 984 F.Supp. 517, 522 [U.S.D.C. E.D. Tex. 1997]; Retail Credit Co. v. Dade County, 393 F. Supp. 577, 584 [U.S.D.C. S.D. Fla. 1975], and others.

6 Brown v. Bank One Corp., 2002 U.S.Dist.Lexis 22692 [U.S.D.C. N.D. Ill. 2002] ["In this case, similarly, Bank One's alleged misconduct in issuing false loans in plaintiffs' names does not raise a challenge to the information supplied to consumer reporting agencies and, thus, is not regulated by the FCRA.]

7 Sehl v. Safari Motor Coaches, Inc., 2001 U.S.Dist.Lexis 12638 [U.S.D.C. N.D. Cal. 2001]; Whitesides v. Equifax, 125 F.Supp.2d 807, 813 [U.S.D.C. E.D. Tex. 2000]; Dornhecker v. Ameritech Corp., 99 F.Supp.2d 918 [U.S.D.C. N.D. Ill. 2000]; McAnly, supra; Olexy v. Interstate Assur. Co., 113 F.Supp.2d 1045 [U.S.D.C. S.D. Miss. 2000]; Mayberry v. Ememessay, Inc., 201 F.Supp.2d 687 [U.S.D.C. W.D. Va. 2002]; Johnson v. Federal Express, 147 F.Supp.2d 1268 [U.S.D.C. M.D. Ala. 2001]; Thomasson v. Bank One, Louisiana, N.A., 137 F.Supp.2d 721 [U.S.D.C. E.D. La. 2001]; Amber Dawn Williams, supra.

8 See, for example, Credit Data of Arizona, Inc. v. State of Arizona, 602 F.2d 195 [C.A. Ariz. 1979].

9 Hughes v. Fidelity Bank, 709 F.Supp. 639 [U.S.D.C. E.D. Pa. 1989]; Equifax Services, Inc. v. Cohen, 420 A.2d 189 [Me. 1980], cert. denied, 450 U.S. 916 [1981].

1999]; Retail Credit Co. v. Dade County, 393 F.Supp. 577 [U.S.D.C. Fla. 1975] [quoting Sen. Proxmire in colloquy with Sen. Javits, 115 Cong.Rec. 13908 [November 6, 1969]].

The state and common law claims are not limited, preempted or barred by the FCRA. Whitesides, supra; McAnly v. Middleton & Reutlinger, P.S.C., 77 F.Supp.2d 810 [U.S.D.C. W.D. Ky. 1999]; Hughes v. Fidelity Bank, 709 F.Supp. 639 [U.S.D.C. E.D. Pa. 1989]; Equifax Services, Inc. v. Cohen, 420 A.2d 189 [Me. 1980], cert. denied, 450 U.S. 916 [1981]; Retail Credit Co. v. Russell, [1975], 218 S.E.2d 54, 234 Ga. 765, at 767; Thomas v. Equifax, Inc., 142 Ga.App. 422, 236 S.E.2d 154; 16 C.F.R.App. to Pt. 610 – Condition of Disclosure, p.6 ["the privilege extended by [s.1681h[e]] **does not apply** to an action brought by a consumer if the action is based on information **not disclosed pursuant to Sections [1681g, 1681h, or 1681m]**]; Baxter v. Reliable Oldsmobile, Inc., 1986 Westlaw 13584 [Ohio App.] Nov. 26, 1986 [Dissent]; 16 C.F.R.App. to Pt. 610 – Condition of Disclosure, p.6 ["the privilege extended by [s.1681h[e]] does not apply to an action brought by a consumer if the action is based on information not disclosed pursuant to Sections [1681g, 1681h, or 1681m]].

In Whitesides, supra, the court found that Section 1681h[e] of the Fair Credit Reporting Act did not bar any state or common law claims *except those based upon communications directly by the consumer reporting agency to the consumer*. In Whitesides, the Court reviewed the provision and found that consumer credit reports issued by any consumer reporting agency to its subscribers *are not reports disclosed "pursuant to Section 1681g, 1681h, or 1681m of this title. . . ."* Section 1681h[e] deals with consumer credit reports which are *issued directly to a consumer*. It makes sense that if a credit reporting agency sent a credit report directly to the consumer then that consumer should not be able to file an action against the credit reporting agency, based upon that report, unless

plaintiff could show malice or willful intent to injure the consumer. Section 1681h[e] has likewise been interpreted by other Courts. Id.

Plaintiff's claims and damages arose from communications not directly with the plaintiff but with other third parties. It is undisputed that Trans Union reported derogatory information regarding the KeyBank account to potential credit grantors of the Plaintiff. In sum, section 1681h[e] only affects claims where the claim arises from communications between the defendant and the consumer. While the FCRA is "no model of clarity,"[10] this interpretation makes sense and no other interpretation gives meaning to the language of the statute. Here, plaintiff complains of false reportings issued by the furnisher to the agency and from the agency onto third party subscribers who then denied credit to plaintiff. Plaintiff suffered credit denials and other adverse affects which naturally and foreseeably flowed through the reporting of false and derogatory credit information about plaintiff which was wrongfully supplied by the furnisher and re-reported on a number occasions by the consumer reporting agency defendant. The consumer reporting agencies act as the mouthpieces for the creditors/furnishers/ subscribers to whom they provide reporting and data access services.

Finally under Rhode Island law, Mr. Denadrade does not need to prove malice or willful intent to injure to succeed on his defamation clam as suggested by Trans Union. To succeed in an action for defamation, the Plaintiff must prove the utterance of a false and defaming statement with fault amounting to at least negligence. Mills v. C.H.I.L.D. Inc., 837 A.2d 714 ( R.I. 2003). There is clearly sufficient evidence in this record for a jury to at least be allowed to hear the defamation claim. Accordingly Trans Union's request for summary judgment on the defamation claim must be

[10] McAnly v. Middleton & Reutlinger, P.S.C., 77 F.Supp.2d 810 [U.S.D.C. W.D. Ky. 1999].

**CERTIFICATION**

I, the undersigned, do hereby certify that on June 12, 2006, a true and accurate copy of the within Memorandum In Opposition to Trans Union's Motion For Summary Judgment was mailed to:

Bruce S. Luckman
Timothy P. Creech
TRICHON, KOGAN,
& WERTHEIMER, P.C.
1818 Market St. 30th Floor
Philadelphia, PA 19103

S:\WPFILES\Fair Credit Reporting Cases\Deandrade vs. Equifax, TU, KeyBank\Objection MSJ.wpd