**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| OVIDIO A. DEANDRADE,<br><br>Plaintiff,<br><br>v.<br><br>TRANS UNION LLC;<br>EQUIFAX INFO. SERVICES, LLC; and<br>KEYBANK USA;<br><br>Defendants. | ) | C.A. No: 04-534-S |

**TRANS UNION LLC'S REPLY TO PLAINTIFFS' OBJECTION TO TRANS UNION'S MOTION FOR SUMMARY JUDGMENT**

Trans Union LLC ("Trans Union"), by and through its undersigned attorneys, states as follows in Reply to Plaintiff's Objection to Summary Judgment:

## I. INTRODUCTION

Plaintiff's Response to Trans Union's Local Rule 56.1 Statement admits virtually every material fact. (See Plaintiff's Response, Dkt. #39). Plaintiff admits: he requested NESCOR to arrange mortgage financing for the purchase of the windows; that plaintiff did not know who the lender would be; he signed financing documentation for NESCOR to use; NESCOR placed the loan with Key Bank at the requested and agreed amount; Key Bank sent plaintiff invoices and a coupon book; plaintiff used the Key Bank invoices and coupon book to make twenty two monthly payments to Key Bank. See Dkt. #39, paras. 1 through 10. Plaintiff's Memorandum of Law in Opposition to Summary Judgment concedes an FCRA action is an inappropriate vehicle to collaterally attack an obligation underlying a consumer report tradeline. (Memorandum, Dkt. 37, p. 7)

Instead of conceding the case, plaintiff submits unfounded and erroneous attorney argument to the effect that plaintiff ought to be excused from the Key Bank obligation because he agreed to pay an unnamed bank for the windows, but that the agreement did not include Key Bank. Simply stated, Plaintiff's Opposition does not demonstrate the existence of a "genuine issue as to any ***material*** fact" as required by Fed.R.Civ.P. 56(c). A "genuine" issue requires that a summary judgment opponent "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Plaintiff's Opposition is largely contentions and commentary of Plaintiff's counsel based upon his unfounded observations and descriptions. As cogently stated by this Court in Harrison v. MBNA, et al, C.A. No. 03-75S, Memorandum and Order dated March 21, 2005, adopted in full by the District Judge, July 13, 2005:

> To oppose the motion successfully, the non-moving party must present affirmative evidence to rebut the motion. See Anderson v. Liberty Lobby Inc, 477 U.S. 242, 256-57, 106 S.Ct. 2505 2514-15, 91 L.Ed.2d 202 (1986). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, [or] unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st. Cir. 1990). Moreover, the "evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." Id. (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 1113, 1116 (1st Cir. 1989). Therefore, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trialworthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving part." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993)

Because plaintiff has admitted virtually all material facts respecting the ratification and consequent accuracy of the Key Bank loan, Trans Union is entitled to judgment as a matter of law. Here ratification is established because of plaintiff admitted that NESCOR (Mr. Irons) was charged with the duty of obtaining the loan, plaintiff never made an effort to do so, and plaintiff never even discussed or knew with what bank the loan would be placed:

> Q. So Mr. Irons said that his company Nescor wasn't lending you money, someone else was going to?
> A. Yes.
> Q. Mr. Irons was going to find that somebody else?
> A. Yes.
> Q. Okay. Do you recall ever signing anything that had Conseco's name on it?
> A. Conseco I think was the first my wife started to pay, and then after Conseco going to KeyBank.
> Q. KeyBank?
> A. Yes.
> Q. Do you remember, the day that you signed papers with Mr. Irons, do you remember signing anything that said the name of Conseco on it?
> A. No. I don't remember.
> **Q. Do you remember any bank showing up on the documents?**
> **A. No. Because he say he going to find.**
> **Q. He said he'd just find financing?**
> **A. Yes.** Plaintiff's Dep, p. 34 (emphasis supplied)

Whether the Key Bank loan documents were forged, signed in blank by plaintiff or signed with apparent authority by plaintiff's authorized agent is not germane – plaintiff ratified the loan transaction by acceptance with full knowledge of the terms and payment for 22 months.

## II. ARGUMENT

### *i. Plaintiff concedes he is not entitled to a collateral attack under the guise of an FCRA claim*

Plaintiff properly acknowledges that a consumer is barred from using an FCRA claim (or dispute) to collaterally attack a loan obligation. (See e.g. Wadley v. Equifax

Info. Servs., LLC, 396 F. Supp. 2d 677, 679-680 (D. Va. 2005). Because of plaintiff's misguided reading of the law of ratification, he does not realize his factual and legal concessions are fatal to his claim.

*ii. Ratification is established by plaintiff's acts and admissions and is not defeated because plaintiff denies knowledge of the person who entered into the Key Bank loan agreement on his behalf.*

Plaintiff wrongly asserts that no ratification of the Key Bank loan occurred because plaintiff did not and does not know who signed the loan documents which resulted in plaintiff receiving a Key Bank loan at plaintiff's requested terms which plaintiff paid for twenty two months. (See Memo p. 8) In a nutshell, plaintiff admits his known agent, NESCOR, was directed and authorized to and did obtain a loan at an agreed amount and terms, with an unknown bank, which plaintiff paid to Key Bank for twenty two months, but now wants to walk away from the deal with no obligation because he does not know who signed the final Key Bank papers. Plaintiff's acceptance of the benefit (the money to pay NESCOR for the windows) and failure to repudiate at the time of receipt of the funds[1] (his payment for twenty two months) is dispositive.

As cogently explained in Ciccone v. Pitassi, 2004 R.I. Super. LEXIS 150, 41-42 (R.I. Super. Ct. 2004):

> Proof of a ratification theory requires several elements. First, the principal must possess "full knowledge of all material facts." Beckwith v. Rhode Island Sch. of Design, 122 R.I. 93, 101, 404 A.2d 480, 485 (R.I. 1979). "Knowledge of the facts is the

---

[1] Restatement (Second) Agency § 98 at 252 (1957).

> The receipt by a purported principal, with knowledge of the facts, of something to which he would not be entitled unless an act purported to be done for him were affirmed, and to which he makes no claim except through such act, constitutes an affirmance **unless at the time of such receipt he repudiates the act.** (emphasis supplied)

> essential element of ratification, and must be shown or such facts proved that its existence is a necessary inference from them." United States v. Beebe, 180 U.S. 343, 354, 21 S. Ct. 371, 375, 45 L. Ed. 563, 570 (1901). Second, the principal must accept a benefit that he or she would otherwise possess no right to retain. UST Corp. v. General Rd. Trucking Corp., 783 A.2d 931, 939 (R.I. 2001). Stated differently, the principal must receive "something to which he would not be entitled unless an act purported to be done for him were affirmed, and to which he makes no claim except through such act." Restatement (Second) Agency, § 98. See also Piscitelli v. De Felice Real Estate, 512 A.2d 117, 120 (R.I. 1986) (stating that the principal "accepts a benefit even when the act of the agent may have been unauthorized"). Finally, the principal must fail to repudiate the act at the time of receipt. Restatement (Second) Agency, § 98.

Plaintiff's Opposition contention that "knowledge of the facts" translates to knowing who signed the principle's name is simply wrong. Plaintiff cites to URI Cogeneration Partners L.P. v. Board of Governors for Higher Educ., 915 F. Supp. 1267, 1280-1281 (D.R.I. 1996) for support, but has unfairly and unreasonably misconstrued the decision. Neither URI nor any other ratification case suggests the "principle" must have full knowledge of the identity of the "agent" (authorized or unauthorized) who makes the deal.

Instead, URI held that the principle must have full knowledge of the "material facts". "Material facts" in the context of ratification are the terms of the contract or transaction, not the agent's name. In URI, *supra*, the material facts were the defendant Board's knowledge of the termination of the plaintiff's energy services agreement. 915 F. Supp. At 1279-1280. In Beckwith v. Rhode Island School of Design, 122 R.I. 93, 404 A.2d 480, 485 (R.I. 1979), the "material fact" *missing* was evidence that the defendant knew the "agent" *offered* plaintiff a three year contract as opposed to only making a *recommendation* to defendant to agree to such a contract. See also, Newport Oil Corp. v.

Viti Bros., Inc., 454 A.2d 706, 707-708 (R.I. 1983), where "principle" knew through its accountant that an agent was receiving and selling gas, but not paying the supplier. The court held the principle ratified the receipt of the gas because it knowingly received the benefit from the sale of the gas: "Consequently, we are of the opinion that there is no sound reason why Viti [the defendant principle] should not pay for the benefits that it received."

Plaintiff's assertion that he does not know who signed his name to the loan he admittedly ratified (accepted and paid) is a nullity. Instantly, the "material facts", admitted by plaintiff, are that NESCOR obtained a loan on terms to which plaintiff agreed which terms inured to plaintiff's benefit. Plaintiff failed to timely reject the loan and instead made payments for almost two years. As such, there are no "material facts" in dispute and Trans Union is entitled to judgment as a matter of law because the reporting of the Key Bank account was accurate. ("Not every discrepancy in the proof is enough to forestall summary judgment; the disagreement must relate to some issue of material fact. See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247-248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)." Spratt v. Wall, 2005 U.S. Dist. LEXIS 1783 (D.R.I. 2005)(Hagopian, M.J.)

Plaintiff's lengthy assertions respecting the denial of a mortgage are not raised in or germane to Trans Union Motion and based upon inadmissible heresay.[2] As such,

[2] Trans Union did not mention plaintiff's alleged credit turn down. In any event, it is no surprise that a mortgage lender might reject an application by a consumer with an existing mortgage which is not being timely paid. However, the unsworn letters to plaintiff's counsel from John Teixeira, a broker, ***not a lender***, are inadmissible hearsay. Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment. See Randle v. LaSalle Telecommunications, Inc., 876 F.2d 563, 570 n.4 (7th Cir. 1989); Martin v. John W. Stone Oil Distributor, Inc., 819 F.2d 547, 549 (5th Cir. 1987); Pink Supply Corp. v. Hiebert, Inc., 788 F.2d 1313, 1319 (8th Cir. 1986); Finn, 782 F.2d at 16-17; Blair Foods, Inc. v. Ranchers Cotton Oil, 610 F.2d 665, 667 (9th Cir. 1980);

plaintiff's Affidavit, paragraph 8 and his Exhibit "3" should be stricken or simply disregarded.

### iii. *Plaintiff Failed to Present Evidence Sufficient to Sustain a Claim For Punitive Damages.*

Plaintiff failed to conduct discovery or to identify a scintilla of evidence supporting his willfulness claim. There was no misrepresentation or concealment alleged or proven. No intentional or reckless act toward plaintiff alleged or proven. Instead, plaintiff contends that Trans Union received but did not forward to Key Bank a copy of the Complaint ***which plaintiff filed against and served upon Key Bank the previous year***. The assertion is a *non sequitur*.

This is not a complex matter. Plaintiff needed new windows and a loan to purchase the windows. Plaintiff asked NESCOR (Mr. Irons) to accomplish both tasks and NESCOR agreed; a contract was signed. (See Plaintiff's Exhibit "A"). The loan at the requested terms was made through Key Bank and plaintiff paid Key Bank for 22 months without complaint. For reasons never articulated in a reasonable or understandable fashion, plaintiff terminated payments to Key Bank and sued Key Bank. Key Bank, not surprisingly, vigorously defended the litigation in state and then federal court. Key Bank also reported plaintiff as delinquent in his obligation for the window loan. When Trans Union reinvestigated plaintiff's single dispute of the derogatory reporting by Key Bank, Key Bank verified the reporting of late payments.

The foundation of plaintiff's instant willfulness claim is that Trans Union received from plaintiff a copy of the Key Bank complaint, but failed to forward that lawsuit to Key Bank during the FCRA reinvestigation process. That very complaint was served upon Key Bank the previous

---

Daily Press, Inc. v. United Press International, 412 F.2d 126, 133 (6th Cir.), cert. denied, 396 U.S. 990, 24 L. Ed. 2d 453, 90 S. Ct. 480 (1969); Morrissey v. Procter & Gamble Co., 379 F.2d 675, 677 n.2 (1st Cir. 1967). Most important, Teixeira's "opinions" are a nullity because he was never designated much less qualified as an expert.

year and of course was the subject of litigation since that time. Plaintiff has taken no discovery and instead relies entirely upon attorney argument that if Trans Union had only forwarded to Key Bank the complaint, Trans Union would have thus complied with the FCRA and, apparently, Key Bank would have terminated the defense of the litigation and changed the reporting and collection of the debt. The assertions of plaintiff's counsel are unfounded, illogical and beyond conjecture and speculation.

Plaintiff has grounded his willfulness claim upon that "speculation" but, the fact the litigation in state and federal court continued for over a year is fatal to his assertions. As such, plaintiff has not met his burden in opposition to Trans Union's motion for summary judgment on plaintiff's willfulness or punitive damages claims. Accordingly, Trans Union is entitled to judgment as a matter of law on plaintiff's FCRA punitive damages claims and his state law claims.

Accordingly, Trans Union is entitled to summary judgment on plaintiff's punitive willfulness and damages claim.

**iv.** ***Plaintiff's State Law Claims, if any, Are Barred.***

Plaintiff's state law claims are barred by Trans Union's FCRA qualified immunity. Plaintiff's assertion that the immunity does not apply to defamation is erroneous and inconsistent with the vast majority of recent binding case law on the subject.

In Valvo v. Trans Union LLC, 2005 U.S. Dist. LEXIS 39120, 24-25 (D.R.I. 2005); Magistrate Judge Almond's following Report & Recommendation was adopted by District Judge, Valvo v. Trans Union LLC, 2006 U.S. Dist. LEXIS 1026 (D.R.I., Jan. 6, 2006)

> C. State Law Claims
> The FCRA allows plaintiffs to pursue certain state law claims against consumer reporting agencies, so long as the consumer

> reporting agency is found to have willfully violated the FCRA. If the consumer reporting agency has not willfully violated the FCRA, the consumer reporting agency has qualified immunity from suit under the FCRA. As noted, the Court has concluded that Plaintiff has not offered sufficient evidence to support a reasonable finding of willfulness. Therefore, under Section 1681h(e) of the Act, Plaintiff's state law claims are barred. See Richardson 190 F. Supp. 2d at 90 ("the FCRA preempts certain state law privacy causes of action, such as defamation."). Section 1681h(e) has been interpreted "to provide qualified immunity to consumer reporting agencies except as to false information furnished with malice or willful intent to injure." Id. In this case, although Trans Union admits that the disputed information did not belong to Plaintiff, this Court has found that Plaintiff has not met its burden of producing sufficient competent evidence from which a reasonable jury could find that any violation of the FCRA by Trans Union was willful. Thus, this Court also recommends that Trans Union's Motion for Summary Judgment as to Plaintiff's state law tort claims be GRANTED pursuant to § 1681h(e).

Magistrate Judge Almond's holding was consistent with long established precedent on the subject of FCRA qualified immunity. See Richardson v. Fleet Bank, 190 F. Supp. 2d 81, 90 (D. Mass. 2001), Wiggins v. Equifax Servs., Inc., 848 F. Supp. 213, 223 (D.D.C. 1993); Bruce, 103 F. Supp. 2d at 1145; Reed v. Experian Info. Solutions, Inc., 321 F. Supp. 2d 1109, 1117 (D. Minn. 2004) 15 U.S.C. 1681h(e); Thornton v. Equifax, Inc., 619 F.2d 700, 703 (8th Cir. 1980); Rivera v. Countrywide Fin. Corp., Countrywide Home Loans, 2006 U.S. Dist. LEXIS 42169, *4-5, (S.D. Miss. 2006)( June 8, 2006) granting summary judgment in an FCRA case on the grounds of 1681h(e) qualified immunity: "Under this provision, Plaintiff's defamation, negligent infliction of emotional distress and invasion of privacy claims are expressly preempted."

In fact, most of the authorities string-cited in plaintiff's Opposition Memorandum, p. 11, also stand for the well established proposition that the FCRA provides a qualified immunity from state law claims of defamation, negligence, and invasion of privacy. See Cushman v. Trans Union Corp., 115 F.3d 220, 229 (3d Cir. 1997); Crane v. Trans Union, LLC, 282 F. Supp. 2d

311, 322 (D. Pa. 2003); Lawrence v. Trans Union L.L.C., 296 F. Supp. 2d 582, 590-91 (D.Pa. 2003); O'Connor v. Trans Union Corp., 1999 U.S. Dist. LEXIS 14917, **21-23, (D.Pa. 1999) and McKeown v. Sears Roebuck & Co., 335 F. Supp. 2d 917, 942-943 (D. Wis. 2004), (reversed in part on other grounds by the same district judge who determined the prior decision should have dismissed additional claims against the defendant consumer reporting agency):

> In arguing that § 1681h(e) does not preempt his state law claims, plaintiff asserts that his claims are not based on a disclosure made "pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report." Sections 1681gand 1681h require credit reporting agencies to disclose credit information to consumers upon consumers' request, whereas section 1681m requires users of consumer reports to disclose information to consumers against whom they have taken adverse actions. Under plaintiffs interpretation, the provision bars defamation claims only when they arise out of disclosures to the plaintiff. Plaintiff asserts that his claims are based on disclosures to third parties.
>
> **As defendant CSC aptly notes, plaintiff's construction would render § 1681h(e) essentially meaningless. All defamation claims arise out of disclosures to third parties; it is a prima facie element of the claim.** Hart v. Bennet, 2003 WI App 231, P21, 267 Wis. 2d 919, 672 N.W.2d 306; *Restatement* (Second) of Torts § 558 (1977). **Under plaintiff's construction, the provision would bar only those defamation claims that would fail as a matter of law.** Moreover, plaintiffs construction is not supported by the language of the provision, which bars claims based on "information disclosed pursuant to section 1681g, 1681h, or 1681m" and not claims based on the disclosure itself. (emphasis supplied)

Simply put, plaintiff's proposed construction makes no sense. Congress did not draft the provision to be "superfluous" or "insignificant." Therefore, plaintiff's unreasonable construction is wrong and the rules of statutory construction are fatal to his assertions. As cogently explained

in the only FCRA case reviewed by the Supreme Court (respecting the FCRA limitations of actions section):

> It is "a cardinal principle of statutory construction" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." Duncan v. Walker, 533 U.S. 167, 121 S. Ct. 2120, 2125, 150 L. Ed. 2d 251 (2001) (internal quotation marks omitted); *see* United States v. Menasche, 348 U.S. 528, 538-539, 99 L. Ed. 615, 75 S. Ct. 513 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.'" (quoting Montclair v. Ramsdell, 107 U.S. 147, 152, 27 L. Ed. 431, 2 S. Ct. 391 (1883))). "Were we to adopt [Andrews'] construction of the statute," the express exception would be rendered "insignificant, if not wholly superfluous." Duncan, 533 U.S. at , 121 S. Ct. at 2125. We are "reluctant to treat statutory terms as surplusage in any setting," 121 S. Ct. at 2125 (slip op., at 6) (internal alteration and quotation marks omitted), and we decline to do so here. (footnote omitted)

Andrews v. TRW, Inc. 534 U.S. 19, 24; 122 S. Ct. 439, 449, 151 L. Ed. 2d 339, 350 (2001)(See also, Nunnally et al v. Equifax Information Systems, 2006 U.S. App. LEXIS 14153, *11, No. 05-12029, June 9, 2006, (11th Cir 2006) where the court of appeals reversed the district court's denial of the consumer reporting agencies motion to dismiss (and allowed the interlocutory appeal), stating:

> As Equifax correctly explains, "a report is not 'based upon' the consumer's file if it is the entire file." To conflate the meaning of "consumer report" with "file" would make the terms redundant. It is a cardinal principle of statutory construction that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (quoting Andrews, *supra*)

(See also, Dodd v. U.S., 545 U.S. 353, 125 S.Ct. 2478, 2490 (2005)("It is, of course, a basic canon of statutory construction that we will not interpret a congressional statute in such a manner as to effectively nullify an entire section.").

Instantly, plaintiff's contention renders the qualified immunity entirely superfluous and a nullity because, as he constructs the provision, it only protects against state law claims which fail as a matter of law in any event.

## III. CONCLUSION

For all the above reasons and authorities, Defendant Trans Union LLC respectfully moves this Court to enter summary judgment in its favor, and to dismiss Plaintiff's claims with prejudice.

Respectfully submitted,

CONRAD M. CUTCLIFFE
KEVIN GLAVIN
CUTCLIFFE, GLAVIN & ARCHETTO
155 S. Main St., Suite 300
Providence, RI 02903-2963
(401) 454-1900; Fax: (401) 331-7001

*Of Counsel:*
Bruce S. Luckman
KOGAN, TRICHON & WERTHEIMER, P.C.
1818 Market St., 30th Floor
Philadelphia, PA 19103
(215) 575-7600; Fax: (215) 575-7688
*Counsel for Defendant, Trans Union LLC*

DATED: June 29, 2006

## CERTIFICATION

I, the undersigned, hereby certify that on the 29th day of June, 2006, a copy of the within document was mailed to Christopher M. Lefebvre, Esquire, P.O. Box 479, Pawtucket, Rhode Island 02862.

Kevin C. Glavin, Esquire