UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| OVIDIO A. DEANDRADE, Plaintiff, | : | |
| v. | : | CA 04-534 S |
| TRANS UNION, LLC; EQUIFAX INFORMATION SERVICES, LLC; and KEYBANK USA; Defendants. | : | |

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

Before the Court is Trans Union LLC's Motion for Summary Judgment (Document ("Doc.") #32) ("Motion for Summary Judgment" or "Motion"). Plaintiff Ovidio A. DeAndrade ("Plaintiff") has filed an objection to the Motion. See Plaintiff's Objection to Trans Union, LLC.'s Motion for Summary Judgment (Doc. #37) ("Plaintiff's Objection"). The Motion has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). A hearing was conducted on July 17, 2006. After reviewing the filings, listening to oral argument, and performing independent research, I recommend that the Motion be granted.

**Facts**

In July of 2001, Plaintiff purchased new windows for his house from NESCOR. See Trans Union LLC's Local Rule 12.1(a)(1) Statement of Undisputed Material Facts (Doc. #33) ("SUF") ¶ 2. The contract price was $11,931.00. See Declaration of Eileen Little[1] ("Little Decl."), Exhibit ("Ex.") A (Letter from Lefebvre

[1] On November 29, 2006, the Court entered an order striking two sentences and one clause of the Declaration of Eileen Little ("Little Decl."). See Order Granting Motion to Strike as Orally Modified. The remainder of the Little Decl. was unaffected.

to Trans Union of 7/16/04), Attachment ("Att.") 2 (Amended Complaint for Declaratory, Injunctive and Other Relief ("Superior Court Amended Complaint"),[2] Ex. A (Contract). Plaintiff and his wife (the "DeAndrades"[3]) requested that NESCOR arrange mortgage financing for the purchase. See SUF ¶ 3. NESCOR did so and arranged financing for the DeAndrades with Conseco Finance ("Conseco"). See Superior Court Amended Complaint ¶ 7. The DeAndrades executed documents in connection with the financing, SUF ¶ 5, but they were not told the identity of the entity providing the financing, see SUF ¶ 6.

When the DeAndrades received notice from Conseco of their first mortgage payment, the amount was greater than the $121.00 per month which they had told NESCOR they were willing to pay. See Deposition of Ovidio A. DeAndrade ("Plaintiff's Dep.") at 35-36. The DeAndrades requested that NESCOR obtain new financing in accordance with the terms to which they had agreed. See Superior Court Amended Complaint ¶ 7. In August of 2001, NESCOR advised them that it had obtained new financing with another lender. SUF ¶ 7; Superior Court Amended Complaint ¶ 8. NESCOR forwarded a check to the DeAndrades for $11,722.30 with instructions that they cash the check and pay off the outstanding mortgage held by Conseco. Superior Court Amended Complaint ¶ 9. The DeAndrades did so. Plaintiff's Dep. at 36; Superior Court Amended Complaint, Ex. C (check for $11,722.30 payable to Conseco Finance).

In September of 2001, the DeAndrades began receiving monthly invoices from Key Bank USA ("Key Bank") in an amount in

---

[2] For simplicity, hereafter the Court cites directly to the Amended Complaint for Declaratory, Injunctive and Other Relief ("Superior Court Amended Complaint").

[3] Plaintiff's wife spells her last name "Andrade," omitting the prefix "De." Deposition of Ovidio A. DeAndrade ("Plaintiff's Dep.") at 42. The Court uses the term "DeAndrades" for convenience.

conformity with that which they had agreed to pay. See SUF ¶¶ 8-9. After two months, the invoices were replaced by a coupon book which the DeAndrades used when making their monthly payments. See id. ¶ 10. From September 2001 to June 2003, the DeAndrades made twenty-two monthly payments to Key Bank. See id. Thereafter, they ceased making payments to Key Bank, and it began to report their account as delinquent. See id. ¶ 12.

The reason Plaintiff ceased making payments is described differently by the parties. According to Trans Union, LLC ("Trans Union" or "Defendant"), Plaintiff stopped paying because he did not think that Key Bank had his signature on a paper. See id. ¶ 11 (citing Plaintiff's Dep. at 37,[4] 34-35). Plaintiff maintains that he "terminated payments to Key Bank after finding that the documents pertaining to the window loan were fraudulently signed by an agent of Nescor or Key Bank, and most importantly, created a lien on the Plaintiff's home in favor of Key Bank." Plaintiff's Response to Defendant's Statement of Undisputed Material Facts Submitted in Support of its Motion for Summary Judgment ("Plaintiff's Response to SUF") ¶ 11. This difference in describing the reason Plaintiff ceased paying Key Bank does not affect the resolution of the instant Motion.

It appears that at some point Plaintiff's wife called Key

---

[4] Plaintiff testified at his deposition:

Q. Sure. Okay. So other than not having a signature on a paper, you owed someone $121 a month for the windows, correct?

A. Yes.

Q. And you decided to stop because you didn't think they had your signature on a paper, correct?

A. Yes.

Plaintiff's Dep. at 37.

Bank and requested copies of the documents pertaining to the loan. See Superior Court Amended Complaint ¶ 16. When the DeAndrades received the copies, they did not recognize the signatures and initials on the promissory note, mortgage, and other documents. See id. ¶ 17. The DeAndrades concluded that their signatures had been fraudulently signed, see id. ¶ 18, presumably by an agent of NESCOR or Key Bank, see id., and they stopped making payments to Key Bank, see Plaintiff's Response to SUF ¶ 11.

On July 16, 2004, Plaintiff's attorney sent Trans Union a letter, advising that Key Bank had reported a derogatory trade-line item on Plaintiff's Trans Union credit report and that the mortgage and the promissory note underlying this line item had been procured by fraud. See Little Decl., Ex. A (Letter from Lefebvre to Trans Union of 7/16/04). The letter stated in part:

> Please do not verify the accuracy of the Key Bank trade-line until you receive sufficient information to satisfy you that the signatures on both the promissory note and mortgage are valid. My clients believe that they are a victim of fraud regarding this transaction. I assume that you will give this matter your immediate attention and will comply with the investigation procedure outlined in the Fair Credit Reporting Act.

Id. Enclosed with the letter was documentation and correspondence which Plaintiff contends substantiated his claim of fraud.[5] See id.

Trans Union acknowledged receipt of the letter and advised Plaintiff's attorney that it would contact the source of the

---

[5] Plaintiff states that he "provided Trans Union 49 pages of documentation which included a copy of a pending Rhode Island Superior Court Complaint with attachments which outlined in great detail the allegation that Plaintiff was a victim of a fraudulent mortgage debt involving KeyBank." Plaintiff's Response to Defendant's Statement of Undisputed Material Facts Submitted in Support of its Motion for Summary Judgment ("Plaintiff's Response to SUF") ¶ 13.

disputed information for verification of its accuracy. See Little Decl., Ex. B (Letter from Wagner to Lefebvre of 8/2/04). Trans Union contacted Key Bank, and Key Bank responded on or about August 10, 2004, that the account information was accurate. See Little Decl. ¶ 7. Specifically, Key Bank confirmed the accuracy of Plaintiff's name, address, social security number, date of birth, and telephone number as well as the derogatory payment history. See id. Trans Union informed Plaintiff that the debt had been verified by Key Bank. See Complaint (Doc. #1) ¶ 10.

On December 21, 2004, Plaintiff filed the instant action against Trans Union, Equifax Information Services, LLC ("Equifax"), and Key Bank, alleging that each had violated provisions of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. See id. ¶¶ 18, 20, 23, 25, 28, 30, 37. Plaintiff has since settled his claims against Equifax and Key Bank. See Plaintiff's Memorandum of Law in Opposition to Trans Union, LLC.'s Motion for Summary Judgment ("Plaintiff's Mem.") at 3. In the single count pled against Trans Union, Plaintiff alleges that:

> Trans Union violated 15 U.S.C. § 1681i by failing to delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies by failing to conduct a lawful reinvestigation, by failing to forward all relevant information to the co-defendant KeyBank, by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file[,] and by relying on the co-defendant when it independently knew that the information they had reported was inaccurate.

Complaint ¶ 28. Plaintiff alternatively alleges that "Trans Union reinserted this inaccurate information into his credit files." Id.

**Summary Judgment Standard**

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Commercial Union Ins. Co. v. Pesante, 459 F.3d 34, 37 (1st Cir. 2006)(quoting Fed. R. Civ. P. 56(c)); accord Kearney v. Town of Wareham, 316 F.3d 18, 21 (1st Cir. 2002). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000)(quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)).

In ruling on a motion for summary judgment, the court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000)(citing Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 672 (1st Cir. 1996)). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." Coyne v. Taber Partners I, 53 F.3d 454, 460 (1st Cir. 1995). Furthermore, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial. If the evidence presented is subject to conflicting interpretations, or reasonable men might differ as to its significance, summary judgment is improper." Gannon v. Narragansett Elec. Co., 777 F. Supp. 167, 169 (D.R.I. 1991)(citation and internal quotation

marks omitted).

The non-moving party, however, may not rest merely upon the allegations or denials in his pleading, but must set forth specific facts showing that a genuine issue of material fact exists as to each issue upon which he would bear the ultimate burden of proof at trial. See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d at 53 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505 (1986)). "[T]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002)(quoting LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993))(alteration in original)(internal quotation marks omitted).

**Discussion**

Defendant makes three arguments in support of its Motion for Summary Judgment.[6] First, Defendant contends that Plaintiff's claim is an impermissible attempt to attack collaterally his liability to Key Bank through the FCRA. See Trans Union LLC's Memorandum of Law in Support of Motion for Summary Judgment ("Defendant's Mem.") at 6-8. Second, Defendant argues that Plaintiff ratified NESCOR's placement of the loan with Key Bank. See id. at 8-9. Third, Defendant asserts that Plaintiff has failed to adduce evidence of an inaccuracy or of negligent or willful noncompliance with the FCRA. See id. at 10-15. The Court finds the second argument to be dispositive and to compel

---

[6] Trans Union also makes a fourth argument that it is entitled to summary judgment on Plaintiff's "defamation claim." Trans Union LLC's Memorandum of Law in Support of Motion for Summary Judgment ("Defendant's Mem.") at 15. However, the only defamation claim in the Complaint is against Key Bank. See Complaint ¶¶ 32-35. Plaintiff has not pled that cause of action against Trans Union. Therefore, the Court does not discuss Trans Union's argument regarding defamation.

the conclusion that Trans Union did not report inaccurate information relative to Plaintiff's debt to Key Bank. It is, therefore, unnecessary to discuss Trans Union's first argument and parts of its third argument.[7]

Trans Union's argument regarding ratification can be summarized as follows. Plaintiff requested that NESCOR arrange mortgage financing to pay for the windows which he had contracted to purchase, see SUF ¶¶ 3-4, and that the amount of the monthly payments not exceed an agreed upon amount, see id. ¶ 9; see also Plaintiff's Dep. at 35-36; Deposition of Barbara Andrade ("Wife's Dep.") at 11. Plaintiff admits that he did not know who the lender would be. See SUF ¶ 6; Plaintiff's Dep. at 33-34; Wife's Dep. at 11. Plaintiff also admits that he signed documents which facilitated NESCOR's efforts to obtain a loan. See SUF ¶ 5; see also Plaintiff's Dep. at 18-19. NESCOR notified Plaintiff that it had obtained financing. See SUF ¶ 7. The monthly payments for the loan which NESCOR obtained for Plaintiff from Key Bank were in the amount which Plaintiff had requested and had agreed to pay. See SUF ¶ 9; see also Plaintiff's Dep. at 33, 35-36. Plaintiff received two invoices and then a coupon book from Key Bank and duly made twenty-two monthly payments to Key Bank from September 2001 to June 2003. See SUF ¶ 10.

In short, Trans Union argues that Plaintiff's use and enjoyment of the windows and twenty-two months of payments to Key Bank establish Plaintiff's ratification and acceptance of the Key Bank loan. See Defendant's Mem. at 9. Because Plaintiff was liable for the loan and wrongly stopped payments, Trans Union contends that its reporting of that history is accurate. See id.

---

[7] The parts of Trans Union's third argument which the Court does not reach are Trans Union's contention that it duly reinvestigated the information which Plaintiff disputed, see Defendant's Mem. at 11-13, and that Plaintiff has failed to prove willfulness, see id. at 13-15.

A necessary element of Plaintiff's claim is that the information Trans Union reported was inaccurate. See Spence v. TRW, Inc., 92 F.3d 380, 382 (6th Cir. 1996)("A showing of inaccuracy is an essential element of a claim under the Fair Credit Reporting Act."); Wadley v. Ford Motor Credit Co., 397 F.Supp.2d 781, 784 (E.D. Va. 2005)(holding that because plaintiff failed to satisfy his threshold burden of showing that defendant furnished any "inaccurate" information, all of his claims under FCRA must fail and summary judgment should be entered in favor of defendant); Wadley v. Equifax Info. Servs., LLC, 396 F.Supp.2d 677, 679 (E.D. Va. 2005)("Because [plaintiff] offers no evidence that [defendant] incorrectly reported the loan, he has failed to establish that the consumer report contains inaccurate information, which is an essential element of an FCRA claim."); Dauster v. Household Credit Services, Inc., 396 F.Supp.2d 663, 664 (E.D. Va. 2005)("In order to state a cause of action under the FCRA, a plaintiff must demonstrate that (1) the consumer report contains inaccurate information and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy."); see also Wantz v. Experian Info. Solutions, 386 F.3d 829, 834 (7th Cir. 2004)("In the absence of evidence that [defendant] disclosed incorrect information ... to a third party, [plaintiff] cannot even show that it violated the [FCRA] reinvestigation requirement ...."); Cahlin v. Gen. Motors Acceptance Corp., 936 F.2d 1151, 1160 (11th Cir. 1991)(stating that credit bureau's reports which "accurately reflected [defendant's] current characterization of an account and how it had been previously reported ... are not actionable under FCRA"). Thus, Trans Union contends that because Plaintiff is unable to establish that its report concerning the debt owed to Key Bank was inaccurate, it is entitled to judgment as a matter of law. See Defendant's Mem. at 10. The Court agrees.

The doctrine of ratification (or affirmance) has long been recognized by the Rhode Island Supreme Court. URI Cogeneration Partners, L.P. v. Bd. of Governors for Higher Educ., 915 F.Supp. 1267, 1280 (D.R.I. 1996). The doctrine holds that a principal may consent to the acts of an unauthorized agent and thus be bound. Id. (citing Beckwith v. Rhode Island Sch. of Design, 404 A.2d 480, 485 (R.I. 1979); Sabourin v. LBC, Inc., 731 F.Supp. 1145, 1150 (D.R.I. 1990)(applying Rhode Island law of agency)). For ratification to occur, a principal must have full knowledge of all the material facts. Id. (citing Beckwith, 404 A.2d at 485).

As Senior (then Chief) Judge Ronald R. Lagueux of this Court has explained in URI Cogeneration Partners, L.P.:

> The ratification of an unauthorized agent's actions may be expressed or implied. Newport Oil Corp. v. Viti Bros., Inc., 454 A.2d 706, 707-708 (R.I. 1983). The standard is notably loose: "Affirmance or ratification may be established by any conduct of the purported principal manifesting that he consents to be a party to the transaction or by conduct, justifiable only if there is ratification. Id. at 708 (citing Restatement (Second) of Agency § 93, at 240 (1957))(hereinafter, Restatement (Agency)). Indicia of ratification include the retention of a benefit to which the principal would have no other claim, id. ....

URI Cogeneration Partners, L.P. v. Bd. of Governors for Higher Educ., 915 F.Supp. at 1280.[8]

---

[8] Another cogent explanation of the doctrine of ratification has been provided by Justice Michael Silverstein of the Rhode Island Superior Court:

> Proof of a ratification theory requires several elements. First, the principal must possess "full knowledge of all material facts." Beckwith v. Rhode Island Sch. of Design, 122 R.I. 93, 101, 404 A.2d 480, 485 (R.I. 1979). "Knowledge of the facts is the essential element of ratification, and must be shown or such facts proved that its existence is a necessary inference from them." United States v. Beebe, 180 U.S. 343, 354, 21 S.Ct. 371, 375, 45 L.Ed. 563, 570 (1901).

In the instant matter, Plaintiff requested that Nescor arrange mortgage financing to pay for the windows which Plaintiff had contracted to purchase. SUF ¶¶ 2-3. Plaintiff asked that the monthly payment in connection with such financing not exceed a certain amount. Id. ¶ 9; see also Plaintiff's Dep. at 21, 33-35. He and his wife signed documents in connection with the financing, SUF ¶ 5, although they were not told the identity of the bank which would eventually finance their purchase of the windows, SUF ¶ 6. NESCOR initially arranged financing for Plaintiff with Conseco, Plaintiff's Dep. at 34, but the first invoice which Plaintiff received from Conseco substantially exceeded the amount which he and his wife had agreed to pay, id. at 35; Wife's Dep. at 12-13. They objected to this, Plaintiff's Dep. at 35; Wife's Dep. at 13, and NESCOR then obtained financing for Plaintiff from Key Bank, Plaintiff's Dep. at 35; Wife's Dep. at 13. Plaintiff received his first invoice from Key Bank in September of 2001. SUF ¶ 8. The monthly payment charged by Key Bank was the amount which Plaintiff sought and to which Plaintiff had agreed. SUF ¶ 9. Plaintiff made twenty-two payments to Key Bank from September 2001 to June 2003. SUF ¶ 10. The first two payments were made in response to invoices sent to Plaintiff, and

---

> Second, the principal must accept a benefit that he or she would otherwise possess no right to retain. UST Corp. v. General Rd. Trucking Corp., 783 A.2d 931, 939 (R.I. 2001). Stated differently, the principal must receive "something to which he would not be entitled unless an act purported to be done for him were affirmed, and to which he makes no claim except through such act." Restatement (Second) *Agency*, § 98. See also Piscitelli v. De Felice Real Estate, 512 A.2d 117, 120 (R.I. 1986)(stating that the principal "accepts a benefit even when the act of the agent may have been unauthorized"). Finally, the principal must fail to repudiate the act at the time of receipt. Restatement (Second) *Agency*, § 98.

Ciccone v. Pitassi, No. Civ.A. PB 97-4180, 2004 WL 2075120, at *12 (R.I. Super. Aug. 13, 2004).

thereafter Plaintiff utilized a coupon book which Key Bank provided him. SUF ¶ 10. After making payments for twenty-two months, Plaintiff stopped paying Key Bank. Id. ¶ 12. Key Bank then reported the account as delinquent. Id.

There is an abundance of evidence that Plaintiff ratified the actions of the unauthorized agent who signed his name and the name of his wife on loan and mortgage documents pursuant to which Key Bank granted the DeAndrades the loan. Plaintiff's use and enjoyment of the windows for twenty-two months and his utilization of Key Bank's money to pay for those windows establishes ratification of the agent's acts and acceptance of the Key Bank loan. By making the monthly payments to Key Bank, Plaintiff demonstrated that he consented to be a party to the loan with Key Bank. See URI Cogeneration Partners, L.P., 915 F.Supp. at 1280 ("Affirmance or ratification may be established by any conduct of the purported principal manifesting that he consents to be a party to the transaction ...."). Similarly, Plaintiff's conduct in using and enjoying the windows, which had been paid for by Key Bank, is "justifiable only if there is ratification," id. Finally, Plaintiff's retention of a benefit (the windows) to which he would have no other claim except for the loan from Key Bank, is a resounding affirmation of the agent's actions. Cf. id. (finding Board's actions "resoundingly affirmed" agent's termination of plaintiff).

Plaintiff contends that Trans Union's argument relative to ratification cannot succeed because Trans Union has not submitted any evidence of the identity of the person who forged the documents in favor of Key Bank. See Plaintiff's Mem. at 8. Plaintiff asserts, without citing authority, that this is "a crucial fact necessary to substantiate [Defendant's] agency theory." Id. The closest Plaintiff comes to providing support for this contention is his quotation of the statement in URI

Cogeneration Parters, L.P. that: "For ratification to occur, a princip[al] ... must have full knowledge of all the material facts," Plaintiff's Mem. at 8 (quoting URI Cogeneration Parnters, L.P., 915 F.Supp. at 1280)(second alteration in original). Plaintiff argues that he "was totally unaware that the so called agent (the mystery person) was going to forge his signature to obtain a second mortgage loan!" Id. Plaintiff also attempts to distinguish his case from URI Cogeneration Parnters, L.P. by stating that "in URI, the parties had entered into a detailed written contract which outlined the responsibilities of the respective parties," id., and that "[i]n this case no such contract exists between Mr. DeAndrade and the phantom agent," id.

The Court is not persuaded by either argument. Plaintiff was aware that NESCOR was going to obtain mortgage financing for him at a certain monthly rate, and he signed documents to facilitate NESCOR's accomplishment of that task. While Plaintiff did not know from whom the financing would be obtained, SUF ¶ 6; see also Plaintiff's Dep. at 33-34, he knew that there would be a lien in favor of the lender which provided the loan, SUF ¶ 3. The windows were installed in Plaintiff's home, see Plaintiff's Dep. at 15, and Plaintiff knew that he owed the contract price for them, see id. at 45-47. When he received the first invoice from Key Bank, Plaintiff learned that Key Bank was providing the financing with monthly payments in the amount Plaintiff had requested, see id. at 33-36. These are the material facts. The identity of the person who signed the loan and mortgage documents so that Plaintiff could obtain the mortgage financing he had requested is not a material fact.

Stated differently, what matters is that Plaintiff had full knowledge of the terms of the contract, namely that he would be indebted to a lender (who was yet to be identified) for the purchase price of the windows and that he would be required to

make monthly payments in a given amount to pay off that debt. The identity of the lender was disclosed to Plaintiff when he received the first invoice from Key Bank. If Plaintiff objected to being indebted to Key Bank (or to Key Bank having a lien against his property), that was the time for Plaintiff to have made known his objection. Instead Plaintiff accepted a benefit and made monthly payments on the debt for the next twenty-two months, thereby failing to repudiate the act which enabled him to receive the benefit. Cf. Ciccone v. Pitassi, No. Civ.A. PB 97-4180, 2004 WL 2075120, at *12 (R.I. Super. Aug. 13, 2004) (explaining that proof of ratification requires that "the principal must receive 'something to which he would not be entitled unless an act purported to be done for him were affirmed, and to which he makes no claim except through such act'")(quoting Restatement (Second) Agency, § 98); id. (stating that "the principal must fail to repudiate the act at the time of receipt")(quoting Restatement (Second) Agency, § 98).

Regarding Plaintiff's other argument, it is true that in URI Cogeneration Parnters, L.P. the written contract between the parties addressed how the contract could be terminated, see 915 F.Supp. at 1275, and that the act which Judge Lagueux found the Board of Governors ratified was the termination of the contract by URI's general counsel, see id. at 1278, 1280. Here the written contract between NESCOR and Plaintiff does not include the agreement that NESCOR obtain mortgage financing for Plaintiff with monthly payments in a certain amount, and the act which the Court finds Plaintiff ratified is the debt to Key Bank. However, there is no dispute regarding the agreement between NESCOR and Plaintiff as to the terms of the financing. There is also no dispute that NESCOR fulfilled its part of the agreement by obtaining mortgage financing for Plaintiff from Key Bank with monthly payments in the required amount. Thus, although the debt

to Key Bank which Plaintiff ratified was not addressed in the written contract between NESCOR and Plaintiff, this difference is meaningless because there is no dispute that Plaintiff agreed to be indebted for the windows provided the monthly payments were in the amount he requested.

Because Plaintiff ratified the debt to Key Bank, Trans Union's reporting of the status of that debt was accurate. Since Trans Union accurately reported the status of Plaintiff's debt to Key Bank, Plaintiff's FCRA claim against Trans Union cannot succeed. See Spence v. TRW, Inc., 92 F.3d 380, 382 (6th Cir. 1996); Wadley v. Ford Motor Credit Co., 397 F.Supp.2d 781, 784 (E.D. Va. 2005); Wadley v. Equifax Info. Servs., LLC, 396 F.Supp.2d 677, 679 (E.D. Va. 2005); Dauster v. Household Credit Servs., Inc., 396 F.Supp.2d 663, 664 (E.D. Va. 2005); see also Wantz v. Experian Info. Solutions, 386 F.3d 829, 834 (7th Cir. 2004); Cahlin v. Gen. Motors Acceptance Corp., 936 F.2d 1151, 1160 (11th Cir. 1991). Accordingly, Trans Union is entitled to summary judgment, and I so recommend.

**Conclusion**

For the reasons stated above, I recommend that Trans Union's Motion for Summary Judgment be granted. Any objections to this Report and Recommendation must be specific and must be filed with the Clerk within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

David L. Martin

DAVID L. MARTIN
United States Magistrate Judge
November 29, 2006