**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **OVIDIO A. DEANDRADE,** | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **C.A. 04-534 S** |
| | : | |
| **TRANS UNION, LLC;** | : | |
| **EQUIFAX INFORMATION SERVICES, LLC;** | : | |
| **and Key Bank USA;** | : | |
| **Defendants** | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OBJECTION TO MAGISTRATE'S REPORT AND RECOMMENDATION**

Now comes Ovidio A. Deandrade, Plaintiff in the above entitled matter, and respectfully submits the following as his memorandum of law in objection to the Magistrate's Report and Recommendation filed November 29, 2006 recommending the granting of Defendant Trans Union LLC's ("Trans Union") Motion for Summary Judgment.

## I. FACTS

Plaintiff contracted with a company called NESCOR for the installation and replacement of windows at his residence. NESCOR arranged for financing with Conseco Finance ("Conseco") and Plaintiff and his spouse voluntarily signed financing documents with Conseco. However, when the loan payments came due, Plaintiff and his spouse were dissatisfied with the terms of the Conseco loan and complained to NESCOR that the monthly payment amount for the windows was more than originally represented. NESCOR promised to remedy the problem and sent the Plaintiff and his spouse a check in the amount of $11,722.30 so they could pay off the balance due Conseco.

Shortly thereafter Plaintiff received a payment coupon book in the mail from Key Bank

for monthly payments in an amount that was consistent with the original terms of the agreement with NESCOR. Plaintiff had never met with nor signed any loan documents with Key Bank, but nonetheless made the payments to Key Bank for twenty two months. Thereafter, Plaintiff's spouse contacted Key Bank and requested copies of the loan documentation. Key Bank obliged and forwarded a copy of a note, mortgage and other documentation in relation to a secured mortgage between Plaintiff, his spouse and Key Bank. Plaintiff and his spouse were shocked to see that a mortgage had been placed on their residence in favor of Key Bank. Upon review of the closing documentation provided by Key Bank, Plaintiff readily determined that all the signatures on the loan and mortgage documentation were not genuine and procured by fraud. Plaintiff believes that NESCOR fraudulently signed all the Key Bank documentation.

A Superior Court lawsuit was filed against Key Bank requesting declaratory relief relative to the validity of the mortgage. Plaintiff immediately stopped making payments to Key Bank, determining that he and his spouse had absolutely no contractual liability to this company. Not surprisingly, Key Bank began to report the non payment of its obligation to the three major credit bureaus which adversely affected Plaintiff's credit score. In response thereto, Plaintiff instructed his attorney to send a letter to the three major credit bureaus, Trans Union, Experian and Equifax, in July of 2004, asking that they conduct an investigation regarding the derogatory payment information that was being reported by Key Bank. The "Reinvestigation Letter," sent by certified mail, attached 49 pages of documentation involving the pending Rhode Island Superior Court action, and detailed alleged fraudulent practices by NESCOR resulting in a mortgage being placed on his home in favor of Key Bank. The letter asked all three bureaus to conduct a reasonable investigation and requested that they "*do not verify the accuracy of the Key Bank*

*tradeline until you receive sufficient information to satisfy you that the signatures on both the promissory note and mortgage are valid. My clients believe that they are a victim of fraud regarding this transaction."*

Within days of receiving the Reinvestigation Letter, Experian correctly deleted the disputed Key Bank tradeline from Plaintiff's consumer report. Trans Union and Equifax did not remove the tradeline and the present litigation was initiated. The Plaintiff has since settled his claims against the Defendants Equifax and Key Bank.

Plaintiff's primary claim against Trans Union is that it violated the Fair Credit Reporting Act ("FCRA") §1681i[1] by failing to conduct a "reasonable investigation" as required by the FCRA. In it's Rule 26 Initial Disclosures, Trans Union admits that it simply used the Automated Consumer Dispute Verification ("ACDV") system which summarized the entire complaint into simple 2 digit codes transmitted to Key Bank that said "Plaintiff states that the account is not his" and "Dispute Present/Prev Acct Status, Pymt Hist Profile, Pymt Rating, Verifty Pymt Hist

---

[1] 15 U.S.C. §1681i requires, *inter alia*:

(a)(1) Reinvestigation required.--

(A) In general.--Subject to subsection (f) of this section, if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

* * *

(a)(5) Treatment of inaccurate or unverifiable information.--

(A) In general.--If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall--

(i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and

(ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer.

* * *

(f) Reinvestigation requirement applicable to resellers.

Profile, Acct Status and Rating." The response from Key Bank was also a 2 digit code (01) which translated into "Account Information Accurate as of date reported." *See,* Trans Union's Rule 26 Initial Disclosures, and Pages 128695241-003-01, "Dispute Line Item - Tradeline Record, dated Monday August 2, 2004" and page 15047, "Trans Union Corporation Consumer Relations, dated 8/10/04 TIME: 07:01," attached hereto as Exhibit "A." Plaintiff submits that these facts alone establish that Trans Union did absolutely no "independent investigation" as required by the FCRA. Indeed, they show that it *ignored* all the documentation provided by the Plaintiff in support of his claim that the Key Bank credit entry was fraudulent. Instead, Trans Union fell back on the computerized 2 digit system routinely used in "normal" disputes and did absolutely no "independent investigation" of its own.

## II. ARGUMENT

### A. The Fair Credit Reporting Act.

The Fair Credit Reporting Act strives to "prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." Equifax, Inc., v. Federal Trade Commission., 678 F.2d 1047, 1048, (11th Cir. 1982) quoting S. Rep. No 517, 91st Cong., 1st Sess. (1969). Consistent with that goal is the requirement that a consumer report be accurate to the maximum possible extent. 15 U.S.C. 1681e (a). In an action under the FCRA, a plaintiff may raise a question of fact merely by showing an inaccuracy in the consumer report and nothing more...." Parker v. Parker, 124 F.Supp. 2d 1216 (D.C.N.D. Ala. 2000). Thus, once a plaintiff demonstrates an inaccuracy in his credit report, the question of whether the defendants had reasonable procedures in place for "reporting information and detecting disparities is one for

the jury, not for the court." Parker, 124 F. Supp at 1225 (emphasis added).

The FCRA also obligates a credit reporting agency to conduct a reasonable reinvestigation of information on a consumer's credit report when a consumer alleges that the information in the report is inaccurate. 15 U.S.C. § 1681i(a). The statute requires the credit reporting agency to consider information submitted by the consumer and the onus is thus on the credit reporting agency, once it receives notice of a consumer dispute, to conduct a "reasonable investigation" of the disputed item. 15 U.S.C. § 1681i(a)(1)(A).

Remarking on the "grave responsibilities" of credit reporting agencies, the Third Circuit has emphasized that such agencies must do more than "merely parrot[ ] information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute." Cushman v. Trans Union Corp., 114 F.3d 220, 225 (3d Cir.1997). Nearly every federal Court to consider the standard required for a FCRA "investigation" or "reinvestigation" has either expressly cited Cushman or adopted similar requirements. Johnson v. MBNA America Bank, NA, 357 F.3d 426 (4th Cir. 2004); Stevenson v. TRW Inc., 987 F.2d 288, 293 (5th Cir. 1993); Henson v. CSC Credit Servs., 29 F.3d 280, 287 (7th Cir.1994); McKeown v. Sears Roebuck, 335 F. Supp. 2d 917, 935 (W.D. Wisc. 2004); Crane v. Trans Union, 282 F. Supp. 2d 311, 318 (E.D. Pa. 2003); Lawrence v. Trans Union, 296 F. Supp. 2d 582, 589-590 (E.D. Pa. 2003); Soghomonian v. United States, 278 F.Supp. 2d 1151, 1156-1158 (E.D. Ca. 2003); see also, Evantash v. G.E. Capital Mortgage Serv., Inc., 2003 WL 22844198, *5 (E.D. Pa. 2003); O'Connor v. Trans Union, 1999 WL 773504 (E.D. Pa. 1999); Sampson v. Equifax, 2005 WL 2095092, *4-5 (S.D. Ga. 2005). As the Seventh Circuit has summarized:

> A credit reporting agency that has been notified of potentially inaccurate information in a consumer's credit report is in a very different position than one who has no such notice. As we indicated earlier, a credit reporting agency may initially rely on public court documents, because to require otherwise would be burdensome and inefficient. However, such exclusive reliance may not be justified once the credit reporting agency receives notice that the consumer disputes information contained in his credit report. When a credit reporting agency receives such notice, it can target its resources in a more efficient manner and conduct a more thorough investigation.

Henson v. CSC Credit Services, 29 F.3d 280, 286-287 (7th Cir. 1994).

**B. Standard for Summary Judgment.**

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(b). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). If such a showing is made, the nonmoving party must present facts that show a genuine issue for trial. Serrano-Cruz v. DFI Puerto Rico, Inc., 109 F.3d 23, 25 (1st Cir.1997).

**C. There are Several Factors Which Preclude Summary Judgment in This Case.**

**i. Plaintiff Did Not Ratify the Key Bank Loan and Such an Issue Is a Disputed Material Fact Which Precludes Summary Judgment.**

Trans Union argues that Plaintiff's claims fail because there is no inaccuracy in the credit report because the Key Bank loan is valid. This is so because Mr. DeAndrade "ratified" the loan within the meaning of the Restatement (Second) Agency § 98. However, in order to prove ratification, Trans Union must first establish that Mr. DeAndrade possessed "full knowledge of all material facts." Beckwith v. Rhode Island School of Design, 122 RI. 93, 101, 404 A.2d 480, 485 (R.I. 1979). Second, Trans Union must prove that Mr. DeAndrade received something "to which he would not be entitled unless an act purported to be done for him were affirmed, and to which he makes no claim except through such act." Ciccone v. Pitassi, 2004 R.I. Super. LEXIS 150, 41 (R.I. Super. Ct. 2004), *citing* the Restatement (Second) Agency, § 98. Finally, the principal must fail to repudiate the act "at the time of receipt." Id.

Although Trans Union argues each of these factors, it fails to parse the exact elements necessary for each element. For example, although Plaintiff is clearly aware *now* that the Key Bank documents were forged, it is hard to imagine how he could have possessed "full knowledge of all material facts" regarding such forgery at the time the monthly payments were being made. Indeed, as the undisputed facts make clear, Plaintiff immediately ceased making payments to Key Bank as soon as the forgery was discovered. As all the discovery in the case made clear, Mr. DeAndrade had little to do with the financial arrangements with NESCOR and his wife conducted all of the negotiations and made the payments to all the financial entities. It was not until his wife obtained the documents from Key Bank and read them to him that Plaintiff became aware that a mortgage had been placed against his home by Key Bank. Thus, it is impossible for Trans Union to establish on Summary Judgment that Mr. DeAndrade possessed "full knowledge of all material facts" as necessary to ratify the Key Bank loan.

The second element of ratification, that Mr. DeAndrade received something "to which he would not be entitled unless an act purported to be done for him were affirmed, and to which he makes no claim except though such act," is likewise not present. Here it is important to clarify that the first loan which NESCOR has obtained for Plaintiff with Conseco was *paid off in full* via an $11, 722.30 check from NESCOR prior to the Key Bank bills being received. Thus, since the windows were installed and paid for in full before the Key Bank loan occurred, Mr. DeAndrade did not receive anything "to which he would not be entitled" otherwise.

Finally, Trans Union argues that Mr. DeAndrade's making of the monthly payments fulfills the failure to repudiate "at the time of receipt" requirement. However, as discussed above, Plaintiff never "received" the proceeds of the Key Bank loan and never understood that a mortgage had been placed upon his principal residence by Key Bank during the twenty two months that he made the payments. As soon as he discovered that the Key Bank documents were forged and purported to place a mortgage on his home, he immediately repudiated, retained counsel, started making his payments into escrow and filed the state court lawsuit. Surely this is as much of a "repudiation" as the Restatement (Second) Agency, § 98 expects.

Plaintiff did not ratify the fraudulent Key Bank note and mortgage, because Plaintiff has never acknowledged the validity of any loan obligation in favor of Key Bank. A valid ratification can be predicated only upon a full and fair disclosure of whatever act or conduct is sought to be ratified. State v. Bellini, 55 R.I. 374, 181 A. 804 (R.I.1935). Even an innocent misrepresentation of a material fact warrants the granting of a claim for recission. Halpert v. Rosenthal, 107 R.I. 406, 267 A.2d 730 (1970). Plaintiffs have consistently alleged that the purported loan with Key Bank was fraudulently procured. Any payments by Plaintiff to Key

Bank were made under the mistaken notion that Plaintiff was satisfying his obligation to NESCOR. Thus, the fact that payments were made to Key Bank is not dispositive on the issue of ratification. The fact that Plaintiff filed a Superior Court lawsuit is the best evidence that there was not disclosure of all material facts necessary for ratification to occur.

Lastly, whether or not the facts and circumstances surrounding a transaction amount to ratification presents a question of fact to be determined by the jury. Ciccone v. Pitassi, 2004 R.I. Super. LEXIS 150, 41 (R.I. Super. Ct. 2004). *Accord*, Ward v. J. Samuels & Bro., 37 R.I. 438, 443, 93 A. 649, 650 (1915); Hall v. N. Y., N.H. & H.R.R. CO., 27 R.I. 525, 530, 65 A. 278, 280 (1906). Accordingly, summary judgment on this point is not appropriate.

**ii. Whether Trans Union Conducted a "Reasonable Investigation" of Plaintiff's Credit Report is a Question of Fact which Precludes Summary Judgment.**

In Cushman v. Trans Union Corporation, 115 F. 3d 220 (3rd Cir. 1997) the Third Circuit observed that the plain language of 15 U.S.C. § 1681(a) places the burden of reinvestigation on the consumer reporting agency. The FCRA reflects "Congress's intent that consumer agencies, having the opportunity to reap profits through the collection and dissemination of credit information bear "grave responsibilities *** to ensure the accuracy of the information." Id. at 225, citing 15 U.S.C. § 1681(a)(4).

A showing of malice or evil motive is not required to prove willfulness under the FCRA, rather, the plaintiff must only show that the consumer reporting agency knowingly and intentionally committed an act in conscious disregard for the rights of the consumer. Dalton v. Capital Associated Industries, Inc., 257 F.3d 409 (4th Cir, 2001). When a credit reporting agency reports an incorrect entry, and the error was not simple human error and it was not promptly

cured, a jury could find that it acted in conscious disregard for the consumer. Sheffer v. Experian, 2003 U.S. Dist. LEXIS 12728, *citing* Boris v. Choice Point Servs., 249 F. Supp. 2d 851, 862 (W.D. Ky. 2003). Where a jury could find for the non-moving party, summary judgment is not appropriate. Valenti v. Qualex, Inc., 970 F. 2d 363, 365 (7th Cir. 1992).

The reasonableness of a credit reporting agency's procedures is a factual question making summary judgment generally inappropriate. Crabill v. Trans Union, 259 F. 3d 662, 664 (7th Cir. 2001.) Whether a credit reporting agency's procedures for investigating a consumer's dispute were reasonable is generally a question for the jury. Soghomonian v. US., 278 F.Supp. 2nd 1151. (E.D.Cal. 2003.)

Courts considering the type of proof required for a plaintiff to present his case to the jury have adopted different approaches. For example in Stewart, the court held that some inaccurate reports alone will provide evidence of unreasonable procedures, such as when there are inconsistencies between two reports prepared about the consumer. Id. at 52. Here, although discovery of Trans Union may have been limited, documents from the other two credit reporting agencies is available to establish the inconsistencies in reporting the Key Bank loan information after Plaintiff notified Experion about the state court lawsuit in an identical letter.

The Eleventh Circuit views the standard of proof somewhat more liberally. In Cahlin v General Motors Acceptance Corp., 936 F. 2d 1151 (11th Cir. 1991), the Court held that the plaintiff may present the case to the jury on the question of reasonable procedures merely by showing an inaccuracy. Although the burden does not shift to the defendant, the jury may infer that the agency's procedures were unreasonable. Id at 1156. Other courts have adopted this approach. For example, in Parker v. Parker, the court held that a consumer "may present his case

to the jury on the issue of reasonable procedures merely by showing an inaccuracy in his consumer's credit report and nothing more." Parker v. Parker, 124 F. Supp. 2d 1216 (N.D. Ala. 2000) citing Philbin v. Trans Union Corp., 101 F.3d 957 (11th Cir. 1991).

## III. CONCLUSION

For all of the foregoing reasons, this Honorable Court should reject the report and recommendation of the Magistrate and deny Defendant's motion for summary judgment.

OVIDIO A. DEANDRADE
By His Attorneys
CLAUDE F. LEFEBVRE
CHRISTOPHER M. LEFEBVRE, P.C.

/s/ Christopher M. Lefebvre #4019
P.O. Box 479
Pawtucket, RI 02862
Tel. (401) 728-6060
Fax. (401) 728-6534

## CERTIFICATION

I hereby certify that on December 12, 2006, I electronically filed the within MEMORANDUM OF LAW with the Clerk of the District Court for the District of Rhode Island using the CM/ECF System. The following participants have received notice electronically: Conrad M. Cutcliffe, Esq., Kevin Glavin, Esq., Cutcliffe, Glavin & Archetto, 155 S. Main St., Suite 300, Providence, RI 02903-2963 and I hereby certify that I have mailed by United States Postal Service, postage pre-paid, the document and a copy of the Notice of Electronic Filing to the following non CM/ECF participants: None.

s/ Christopher M. Lefebvre

S:\WPFILES\Fair Credit Reporting Cases\Deandrade vs. Equifax, TU, KeyBank\DEANDRADE Memorandum in Support of Objection to Magistrates Repor.wpd